# United States Court of Appeals
## For the First Circuit

No. 01-2463

HEIDELBERG AMERICAS, INC.,
HEIDELBERG WEB SYSTEMS, INC.,

Petitioners, Appellees,

v.

TOKYO KIKAI SEISAKUSHO, LTD. AND TKS (USA), INC.,

Respondents, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, U.S. District Judge]

Before

Torruella, Lynch and Howard,
Circuit Judges.

Barry J. Reingold, with whom Perkins Coie, LLP, James P. Bassett, Marty Van Oot, and Orr & Reno, were on brief, for appellants.
Mark C. Rouvalis, with whom Sarah B. Knowlton, McLane, Graf, Raulerson & Middleton, P.A., and Hugh T. Lee, were on brief, for appellees.

June 20, 2003

**HOWARD**, **Circuit Judge**.   In July 2001, Tokyo Kikai Seisakusho and TKS (USA), Inc. (collectively, "TKS"), served a subpoena duces tecum on Heidelberg Americas, Inc., and Heidelberg Web Systems, Inc. (collectively, "Heidelberg").   The subpoena sought information purportedly relevant to a lawsuit in which TKS is a party but Heidelberg is not.   Heidelberg, which was served at its offices in New Hampshire, successfully moved to quash the subpoena in the resident United States District Court under Fed. R. Civ. P. 45(c)(3).   TKS appeals, asserting abuse of discretion.   We affirm.

## I. Background

TKS is a defendant in a civil action pending in the United States District Court for the Northern District of Iowa. The plaintiff in that action, Goss Graphic Systems, Inc., alleges that TKS and seven other defendants (collectively "Iowa defendants") violated the Anti-Dumping Act of 1916, 15 U.S.C. § 72 (2003)[1] ("the Anti-Dumping Act"), by selling newspaper printing

_____

[1]In relevant part, the Anti-Dumping Act provides:

> It shall be unlawful for any person importing or assisting in importing any articles from any foreign country into the United States, commonly and systematically to import, sell or cause to be imported or sold such articles within the United States at a price substantially less than the actual market value or wholesale price of such articles, . . . *Provided*, That such act or acts be done with the intent of destroying or injuring an industry in the United States, or of preventing the establishment of an industry in the United States,

presses at prices substantially below their market values.  The Iowa lawsuit itself derives from an earlier trade dispute that culminated in a 1996 Department of Commerce ("DOC") determination that the Iowa defendants had engaged in illegal dumping and a 1996 International Trade Commission ("ITC") determination that further imports by the Iowa defendants posed a risk of economic harm to Goss.

After the 1996 determinations, Goss' financial condition precipitously declined.  In 1999, Goss filed a petition to reorganize under Chapter 11 of the Bankruptcy Code.  Following its emergence from bankruptcy in early 2000, Goss brought the Iowa lawsuit, which attributes Goss' late-1990s financial woes to the anti-competitive practices of the Iowa defendants.  The complaint in the Iowa action alleges, for example, that the Iowa defendants violated the Anti-Dumping Act by continuing to unlawfully dump even after the DOC and ITC rulings, causing Goss to lose crucial sales and contracts.

Heidelberg, a manufacturer of newspaper printing presses, is not a party in the Iowa action.  Nor was it a party to the DOC or ITC investigations.  Heidelberg became involved in this matter

---

or of restraining or monopolizing any part of trade and commerce in such articles in the United States. . . .
Any person injured in his business or property be reason of any violation of, or combination or conspiracy to violate, this section . . . shall recover threefold the damages sustained . . ..

as a result of acquisition talks it had with Goss. In July 2002, Goss and Heidelberg entered into an agreement in which the parties promised not to disclose for two years any confidential information obtained during the negotiations between them. As part of ongoing discussions, Heidelberg allegedly evaluated Goss' value as a going concern.

A year after the confidentiality agreement was entered into, TKS subpoenaed Heidelberg in New Hampshire, requesting the production of "[a]ll documents received, reviewed or generated by Heidelberg since 1991 relating to the possible acquisition of (a) an ownership interest in Goss, or (b) any other type of business affiliation with Goss." Heidelberg responded by objecting to the subpoena on the grounds that it was "unduly broad, overly burdensome, [and] seeks trade secrets and other confidential research development or commercial information." Heidelberg also cited a then-recent report of the World Trade Organization that concluded that the Anti-Dumping Act violated two treaties to which the United States was a signatory.[2] Subsequently, Heidelberg filed its motion to quash.

On August 6, 2001, the New Hampshire district court granted the motion to quash in a margin order. Two days later, the Iowa district court stayed the underlying proceedings based on

---

[2]Heidelberg asserted that the putative unlawfulness of the Anti-Dumping Act undermined the legal basis for Goss' lawsuit and rendered the subpoena suspect, if not illegitimate.

proposed legislation in Congress to repeal the Anti-Dumping Act. TKS soon thereafter filed a motion for reconsideration in the New Hampshire district court. This was denied "on the grounds that the subpoena was unduly burdensome, overly broad, and sought documents that contained trade secrets and confidential information." The court further found that "the relevanc[e] of the requested documents was not sufficiently justified." Even if there were adequate grounds for the subpoena, the court added, the dubious legal status of the Anti-Dumping Act militated against its execution.

TKS appealed,[3] but we stayed the appeal for the duration of the stay of the Iowa litigation. Congress subsequently failed to pass legislation repealing the Anti-Dumping Act. Accordingly, in August 2002, the Iowa district court lifted its stay and directed the parties to complete discovery. We then lifted our stay as well.

## II. Analysis

TKS challenges the ruling below on three overlapping bases. First, TKS contends that it did indeed establish the relevance of the documents sought. Second, it says the subpoena

---

[3]Although interlocutory orders are usually non-appealable, we may review a district court order quashing a subpoena duces tecum in a jurisdiction outside the principal proceeding. See Horizons Titanium Corp. v. Norton Co., 290 F.2d 421, 423-24 (1st Cir. 1961); 15B Wright, Miller & Cooper, Federal Practice & Procedure § 3914.24, at 180-83 (2d ed. 1994).

was narrowly tailored to solicit information related to the Iowa litigation, and thus was neither overly broad nor unduly burdensome. Finally, TKS contests the district court's determination that the information sought constituted protected trade secrets or confidential commercial information. To a degree, all these arguments address one question central to the appeal: whether TKS' need for the information overcomes Heidelberg's rationale for resisting disclosure. We therefore fix our attention on TKS' second argument.

District courts exercise broad discretion to manage discovery matters. In turn, we review discovery orders for an abuse of that discretion, "recognizing that an appeals court simply cannot manage the intricate process of discovery from a distance." Brandt v. Wand Partners, 242 F.3d 6, 18 (1st Cir. 2001). Put another way, we will disturb a discovery order only "upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 186 (1st Cir. 1989).

While district courts are to interpret liberally the discovery provisions of the Federal Rules of Civil Procedure to encourage the free flow of information among litigants, limits do exist. See, e.g., Fed. R. Civ. P. 26(b) advisory committee notes (1983). For example, Fed. R. Civ. P. 26(c) provides that, upon a

showing of good cause, the presiding court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Even more pertinently, Fed. R. Civ. P. 45(c)(3)(A)(iv) commands that a court "shall" quash or modify a subpoena if the subpoena "subjects a person to undue burden."

In its uphill battle to convince us that the district court abused its discretion, TKS asserts that it established need for the materials sought because the materials bear on causation and damages in the Iowa suit. And, TKS further argues, any burden placed on Heidelberg does not eclipse this need. TKS explains that it will defend the Iowa lawsuit on the theory that Goss' inept management, rather than TKS' dumping practices, caused Goss' financial difficulties. Heidelberg's assessment of Goss as a going concern, so the argument goes, likely contained an assessment of Goss' management that could substantiate this defense theory. Moreover, even if no such assessment is among Heidelberg's records, Heidelberg's analysis of market dynamics during the relevant period of time (an analysis that was likely committed to paper) might help to explain to the factfinder, or lead to the discovery of evidence that would help explain to the factfinder, why Goss was experiencing financial problems. This argument does not persuade us that the district court was plainly wrong in quashing the subpoena.

Even were we to assume, for the sake of analysis and contrary to the district court's assessment of the matter, that TKS has established that the documents have some relevance to the Iowa litigation, but cf. Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1328 (Fed. Cir. 1990) ("A litigant may not engage in merely speculative inquiries in the guise of relevant discovery."), the district judge acted within his discretion in concluding that the subpoena cast too wide a net. The materials sought are not probative of whether TKS engaged in unlawful dumping, the threshold issue in the Iowa litigation. They are at least potentially germane to whether and how much any such dumping harmed Goss, but some considerable question exists as to how discovery of the materials would lead to admissible evidence. In other words, the documents are not obviously, and perhaps not even reasonably, calculated to lead to other discoverable materials.

The burden on the non-party Heidelberg, by contrast, appears to be significant. See Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs[.]"). The subpoena encompasses a decade's worth of materials and asks for "all documents received, reviewed or generated by Heidelberg . . . relating to . . . any . . . type of business affiliation with Goss." (emphases supplied). Given this apparent imbalance between

-8-

TKS' need and the imposition on Heidelberg, the court permissibly

granted the latter relief under Fed. R. Civ. P. 45(c)(3).[4]

**Affirmed.**

---

[4]Of course, if circumstances change, the district court may revisit its decision. <u>See</u> <u>Ariel</u> v. <u>Jones</u>, 693 F.2d 1058, 1060 (11th Cir. 1982)(per curiam); 9A Wright, Miller & Cooper, <u>Federal Practice & Procedure</u> § 2459, at 53-55 (2d ed. 1994).

-9-