**ESTATE OF Mark J. ROSADO-ROSARIO, et. al.,
Plaintiffs,**

v.

**FALKEN TIRE CORPORATION, et al., Defendants.**

**Civil No. 14-1505 (FAB)**

United States District Court,
D. Puerto Rico.

Signed October 28, 2016

Albert L. Parisi, Parisi & Bellavia, Rochester, NY, Jorge Carazo-Quetglas, Carazo Quetglas Law Office, Guaynabo, PR, for Plaintiffs.

Christian M. Echavarri-Junco, Daniel Perez-Refojos, Karena Montes-Berrios, O'Neill & Borges, LLC, San Juan, PR, E. Paul Dougherty, Jr., Wilson Elser Moskowitz Edelman & Dicker LLP, Los Angeles, CA, for Defendants.

## OPINION AND ORDER

### FRANCISCO A. BESOSA, UNITED STATES DISTRICT JUDGE

The Estate of Mark Rosado Rosario brought suit against Falken Tire Corp., Dunlop Falken Tires, Ltd., Sumitomo Rubber Industries, Ltd., and Sumi Rubber Indonesia alleging that a defect in one of defendants' tires caused Rosado Rosario's vehicle to collide with a pole on July 29, 2013, resulting eventually in his death. (Docket No. 9.) During and after the periods for written discovery and fact witness deposition discovery, the parties petitioned the Court to resolve several disputes.

Before the Court are defendants' motions to quash deposition notices,[1] (Docket No. 80), plaintiffs' response and motion to compel documents, (Docket No. 82), plaintiffs' motions to extend discovery (Docket Nos. 101, 116), and their responses, replies, and sur-replies, (Docket Nos. 85, 95, 109, 112, 115, 119). Also before the Court is defendants' motion to compel production of the subject tire, (Docket No. 120), plaintiffs' response, (Docket No. 121), and defendants' reply, (Docket No. 124). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** defendants' motion to quash depositions, (Docket No. 80), **GRANTS IN PART** and **DENIES IN PART** plaintiffs' motion to compel documents, (Docket No. 82), and

---

1. Defendants also move for a protective order in response to plaintiffs' deposition requests. There is no continuing need, however, for protection beyond the Court's decision to allow or prohibit the requested depositions. Thus, the Court ends its analysis of plaintiffs' additional deposition requests at the defendants' motion to quash.

**GRANTS IN PART** and **DENIES IN PART** defendants' motion to compel the subject tire and related documents, (Docket No. 120).

## MOTIONS TO QUASH DEPOSITIONS, TO COMPEL PRODUCTION OF DOCUMENTS AND FOR EXTENSION OF TIME TO COMPLETE FACT DISCOVERY (DOCKET NOS. 80, 82, 101 & 116)

### A. Background

The Court's Initial Scheduling Conference ("ISC") memorandum established deadlines for phases of discovery. (Docket No. 36.) The deadline for written discovery was October 30, 2015. Id. at 29. The deadline to give notice of depositions was November 15, 2015. Id. The deadline to conclude fact witness depositions was June 15, 2016. Id.

During the pertinent discovery periods, plaintiffs requested documents, (Docket No. 110-3), and noticed depositions, (Docket Nos. 82-1 thru 82-10). Three additional depositions were noticed on February 28, 2016. (Docket Nos. 82-11, 82-12, 82-13.) These depositions, of James Huntsman Johnson ("Johnson"), Masashiro Tamura ("Tamura"), and Kenji Yoshida ("Yoshida"), were held on March 15-17, 2016. (Docket No. 80 at p. 4.)

Plaintiffs claim that at these depositions they learned of new documents and individuals that needed to be deposed. (Docket No. 82 at p. 4.) Thus, plaintiffs assert, that, on March 21, 2016, following the depositions, they sent an informal request for additional discovery documents to defendants. Id.; see also Docket No. 82-15. Plaintiff followed this request by noticing five additional deposition requests upon defendants on April 1, 2016. (Docket Nos. 82-16 thru 82-20.) The parties met and conferred on April 5, 2016 to discuss their discovery disputes. (Docket No. 84 at p. 4.) Following this conference, plaintiff moved the Court to compel the requested documents and depositions and to extend the deadline for fact witness deposition discovery. (Docket Nos. 82, 101, 116.)

### B. Additional Depositions

Defendants argue that the five depositions noticed on April 1, 2016, should be quashed because they were served four months after the November 15 deadline to serve deposition notices and are thus untimely. (Docket Nos. 80 at pp. 2-3; 85 at pp. 8-10.) They also argue that the material to be covered in the depositions should have been addressed to the deponents at the March 2016 depositions. (Docket No. 85 at pp. 3-6.)

#### 1. Additional Deposition Requests at Docket Nos. 82-16 and 82-17—Incorrect Deponents

■ Plaintiffs counter that by producing Tamura to discuss quality assurance, defendants produced the wrong person because "Mr. Horiba", not Tamura, was the head of quality assurance during the relevant period in 2012. (Docket Nos. 82 at pp. 4-5; 95 at p. 2.) Plaintiffs also claim that by producing Johnson to discuss investigations, warnings, and complaints, defendants produced the wrong person because Tim Widener ("Widener") is the person with the most knowledge on those topics. Id. 5-6.

■ Federal Rule of Civil Procedure 30(b)(6) allows a party to name an organization for a deposition. Fed. R. Civ. P. 30(b)(6). The organization must then select an individual to testify on its behalf "about information known or reasonably available to the organization." Id. The organization must designate multiple deponents if more than one is necessary to respond to all designated topics, Banks v. Office of the Senate Sergeant–At–Arms, 241 F.R.D. 370, 373 (D.D.C. 2007), and "may set out the matters on which each person designated will testify." Fed. R. Civ. P. 30(b)(6); see also Grajales v. Puerto Rico Ports Auth., 897 F.Supp.2d 7, 11 (D.P.R. 2013) (Besosa, J.) (quoting Fed. R. Civ. P. 30(b)(6) ("The rule then states clearly that '[the organization] may set out the matters on which each person designated will testify' but does not require the organization to do so.")). The selected individual need not be the "most knowledgeable" individual regarding a designated subject. Rodriguez v. Pataki, 293 F.Supp.2d 305, 311 (S.D.N.Y.2003), aff'd, 293 F.Supp.2d 315 (S.D.N.Y. 2003).

Here, plaintiffs fail to establish that the produced deponents were not knowledgeable

and prepared to address the topics plaintiffs identified. Defendants produced three of their employees for depositions pursuant to Rule 30(b)(6). See Docket Nos. 104–1 (Tamura deposition), 104-2 (Yoshida deposition), 80-35 (Johnson deposition excerpts), 86-2 (Johnson deposition excerpts). Despite not having been the head of quality assurance in 2012 when the subject tire was manufactured, deponent Tamura was able to answer numerous questions regarding quality assurance during his deposition. See Docket No. 104–1 at pp. 9, 12–13, 17–18, 27, 31. Deponent Johnson also competently answered numerous questions about tire warnings and issues discovered through the tire warranty and return program. See Docket Nos. 80–35 at pp. 1–11 (warnings); 86-2 at pp. 5–19 (warnings); 86-2 at pp. 46–55 (warranty returns). Having produced deponents who were prepared to, and did, answer questions in the areas that plaintiffs requested in their deposition notices, defendants have complied with the timely deposition notices issued on November 14, 2015 and thus, the additional deposition requests for Widener and Mr. Horiba lack justification. Accordingly, the Court **GRANTS** defendants' motion to quash the April 1, 2016 deposition requests for Widener and Mr. Horida. (Docket Nos. 82–16, 82–17).

### 2. Additional Deposition Request at Docket No. 82–18—Failure to Provide Warnings

■ Plaintiffs also argue that they should be "permitted to depose the individual at SRI with the most knowledge of warnings" because defendants have failed to provide these warnings associated with the Ziex 329 tire despite plaintiffs' repeated requests. (Docket No. 82 at p. 7.) Plaintiffs, however, did not request to depose any individual regarding warnings in their first set of deposition notices, but did request documents pertaining to warnings associated with the tire. See Docket Nos. 80–25 thru 80–34 (requesting warning documents *duces tecum*). Thus, plaintiffs asserted before the deposition notice deadline, in their initial deposition requests and asserting a failure to warn claim, that warnings were relevant to this litigation

and chose to request only warning documents, not depositions. Plaintiffs must be held to this strategic decision.

Additionally, deponent Johnson, of SRI's subordinate company Falken, testified at length in his deposition about the development, placement, and distribution of warnings. See Docket Nos. 80–35 at pp. 1-11; 86-2 at pp. 5-19. "The Court is unable to find any authority for the contention that a business entity must designate each and every person within the organization who is able to respond to a deposition notice ...." Univ. of Kansas v. Sinks, 565 F.Supp.2d 1216, 1226 (D. Kan. 2008).

Because plaintiffs had the opportunity to request depositions regarding warnings at the same time that it requested documents regarding warnings, *i.e.* before the deadline to notice depositions, and because plaintiffs deposed deponent Johnson regarding warnings, the Court finds that plaintiffs had "ample opportunity to obtain the information by discovery in the action" regarding tire warnings. See Fed. R. Civ. P. 26(b)(2)(C)(ii). The Court, therefore, **GRANTS** defendants' motion to quash the April 1, 2016 deposition requests to "depose the individual at SRI with the most knowledge of warnings."

### 3. Additional Deposition Request at Docket No. 82–19—New Information Necessitates Additional Deposition Regarding Production Costs of the Ziex 329 Tire

■ Plaintiffs also argue that the additional depositions should be allowed, despite having been noticed after the deadline, because during the original depositions, plaintiffs learned that additional documents and depositions were required to address information previously requested but not produced. (Docket Nos. 82 at p. 4; 101 at p. 2.) At Yoshida's deposition, plaintiffs learned that defendant SRI changed its production of the Ziex 329 tire from a single compound, compound 332, to a mix of two compounds, compounds 332 and 396.[2] (Docket No. 82 at p. 6.) Plaintiffs argue that this new information makes it necessary that they depose a mem-

---

**2.** Defendants refer to this compound as W336.

(Docket No. 119 at p. 4.)

ber of the SRI accounting team in order to obtain information on the cost of the different compounds.[3] Id. Because this information regarding the use of the second compound was not known to plaintiff before the deadline to notice depositions, plaintiffs did not have "ample opportunity to obtain the information by discovery in the action" regarding the second compound. See Fed. R. Civ. P. 26(b)(2)(C)(ii). The Court, therefore, DENIES defendants motion to quash this deposition request. Plaintiffs will have 45 days from the date of this order to conduct this deposition in California.

### 4. Additional Deposition Request at Docket No. 82–20—Relevance of Information Regarding Run Flat Tires

■ In addition to their timeliness argument, defendants argue that the depositions should be quashed because the information sought regarding run flat tires is irrelevant. (Docket Nos. 80 at p. 13; 85 at pp. 6-7; 109 at p. 4.) Regarding run flat tires, plaintiffs argue that the vehicle collision at issue was caused by a sidewall blowout of the subject tire and that defendant-SRI produces run flat tires that have reinforced sidewalls that prevent blowouts. (Docket No. 82 at pp. 6-7.)

■ "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" considering the "burden or expense of the proposed discovery" and several other factors. Fed. R. Civ. P. 26(b). "While district courts are to interpret liberally the discovery provisions of the Federal Rules of Civil Procedure to encourage the free flow of information among litigants, limits do exist." Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003). Rule 26 requires a court to "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: ... the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is

more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Here, the relevancy of the information requested regarding run flat tires to plaintiffs' claims is debatable. The subject tire of this litigation is not a run flat tire. (Docket No. 119 at p. 6.) Run flat tires and the subject tire differ regarding purpose, category, and size and therefore, run flat tires may not be directly comparable to the subject tire. (Docket No. 104–2 at pp. 20; see also Docket No. 86–2 at pp. 28-31.) Although Falken's parent company, SRI, is experimenting with run flat tires, Falken does not manufacture, market, or sell run flat tires in Puerto Rico.[4] (Docket Nos. 80–35 at pp. 18-19; 86-2 at pp. 32-33; see also Docket No. 104–2 at p. 20.) Additionally, it is unclear from plaintiffs' arguments how they intend to use information regarding run flat tires to support their claims. Thus, the relevance of any information sought regarding run flat tires is questionable.

Assuming that deposing an individual at SRI who is knowledgeable regarding run flat tire technology may produce information regarding plaintiffs' claim that the subject tire was defectively designed, the substantial burden of producing this individual for deposition is not offset by the minimal increase in information regarding plaintiffs' claims. Plaintiffs request that the deposition be conducted in San Juan, Puerto Rico. (See, e.g., Docket No. 82–20 at p. 2.)

■ "It is well settled that the deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business, especially when, as in this case, the corporation is the defendant." Planadeball v. Wyndham Vacation Ownership, No. CIV. 12–1485 JAG, 2013 WL 864612, at *1 (D.P.R. Mar. 7, 2013) (Lopez, M. J.) (internal marks and citations omitted). Defendants and their potential deponents reside and have their principal places of business in Japan and California. (Docket No. 85 at p. 7.) Defendants would incur significant expense

---

**3.** Plaintiffs also request information regarding the cost to manufacture a run flat tire. (Docket No. 82 at p. 6.)

**4.** The "RF" marking on the side of Falken's tires stands for "reinforced," not for "run flat." (Docket Nos. 80–35 at pp. 18-19; 86-2 at pp. 33-34.)

in traveling to Puerto Rico for depositions. (Docket No. 80 at p. 14.) Defendants have already produced three witnesses in response to plaintiffs' initial requests for depositions. (Id. at p. 4.) Requiring defendants to incur an additional expense for additional depositions that were requested after the deposition notice deadline and will not likely produce much relevant information creates an undue burden upon defendants. Thus, the Court **GRANTS** defendants motion to quash plaintiffs' deposition request for the individual with the most knowledge of run flat technology and related topics.

## C. Additional Document Discovery

■ Plaintiffs also move to compel documents that they claim were requested from defendants but never produced. (Docket No. 82 at pp. 7-15.) Plaintiffs argue that their March 21, 2016 request, although made after the deadline for document request is timely because, at the March 2016 depositions, plaintiffs learned of the existence of specific documents that they had requested previously in general terms but that had never been produced by defendants. Id. at p. 4; Docket No. 95 at p. 4.

Defendants rebut this request arguing that the requests are new and should therefore be barred as untimely. (Docket No. 109 at p. 3.) But even if they are not untimely, some of the documents that defendants previously submitted, which defendants reference by Bates stamp numbers, respond to these new requests by plaintiff. (Docket No. 85 at p. 2.)

Upon comparing plaintiffs' original February 2nd request for documents, (Docket No. 110–3), with plaintiffs March 21st letter requesting documents, (Docket No. 82–15), the Court finds that both plaintiffs and defendants arguments are partially correct. Plaintiff is correct that some of the information was previously requested, including requests for design, testing, patents and trademarks, recall, NHTSA documents, and warning documents. (Docket No. 110–3 at pp. 9-17.) The Court, therefore, **GRANTS** plaintiffs' motion to compel regarding these topics [5] and OR-DERS defendants to produce information requested by plaintiff in these areas because the requests were timely made in the February 2, 2015 production request and clarified in the March 21, 2016 letter.

Defendants, however, are correct when asserting that the March 21, 2016 letter seeks new information. The February 2, 2015 production request does not request documents regarding SRI Corporate newsletters, the Vision 20/20 plan, run flat tires, costs, or Falken's relationship with Pep Boys. Compare Docket No. 82–15, with Docket No. 110–3. The Court, therefore, **DENIES** plaintiffs' motion to compel these documents as untimely.

The February 2, 2015 production request also fails to request documents regarding the compounds used to make the Ziex 329 tire. See Docket No. 82–15. Plaintiffs, however, did not learn that defendants used compound 396 in producing Ziex 329 tires until during the deposition of deponent Yoshida. (Docket No. 82 at p. 6.) The Court, therefore, considers plaintiffs' document request, filed on the second business day after the depositions in which they learned of the use of the compound 396 in the production of the Ziex 329 tire, to be timely. The Court **GRANTS** plaintiffs' motion to compel the production of documents relating to compounds 332 and 396 used to make Ziex 329 tires.

As defendants contend, see Docket No. 115 at pp. 4-6, production of these documents relating to compounds 332 and 396 may be limited by a protective order in which defendants show "good cause" that they are "trade secrets" requiring protection against disclosure pursuant to Rule 26(c). See Irizarry-Santiago v. Essilor Indus., 293 F.R.D. 100, 103–04 (D.P.R. 2013) (Besosa, J.) (citing Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986) ("In order to justify a protective order … a party must make a showing of good cause, which 'must be based on a particular factual demonstration of potential harm, not on conclusory statements.' ")) Defendants brief argument in support of the Court ordering protection of information regarding

5. Because defendants have produced some documents regarding testing and warnings, (Docket No. 115 at p. 3 (referencing documents produced and assigned Bates Nos. 23–24, 28–55)), the Court's Order compels only additional, outstanding documents regarding these topics.

the compounds is insufficient to establish the required "good cause." See Docket Nos. 115 at pp. 4–6; 119 at pp. 4–6. The Court welcomes further argument on this topic, to be filed by the parties simultaneously **no later than November 10, 2016.**

## MOTION TO COMPEL (DOCKET NO. 120)

Defendants move the Court to compel plaintiffs to produce the subject tire and rim of this litigation so defendants' experts may examine it in their own laboratories and perform non-destructive, non-invasive tests necessary to complete their expert reports. (Docket No. 120 at p. 2.) Defendants also request that the plaintiffs be ordered to produce documents associated with the storage and treatment of the subject tire. Id.

### A. Background

On December 18, 2013, several months after the July 29, 2013 vehicle collision, the parties met at the Rio Grande police lot and performed a visual inspection of the vehicle and subject tire, which had been exposed to the elements while at this outdoor lot. (Docket No. 120 at p. 3.) Plaintiffs' expert was present at this inspection, but defendants had not yet retained an expert. Id. On June 10, 2014, following this initial inspection, defendants sent plaintiffs a Notice of Preservation requesting preservation of the vehicle and its tires. Id.

To facilitate further inspections, the parties entered a Joint Inspection Agreement ("JIA") on August 12, 2014. (Docket No. 120 at p. 4.) Pursuant to the terms of the JIA, the parties held a joint inspection on August 19, 2014. Id. At this inspection, the subject tire and its rim were removed from the vehicle and placed in plaintiffs' care. Id. at pp. 4–5. Plaintiff remains in control of the subject tire and rim. Id.

On January 28, 2016, defendants requested documents from plaintiffs and that plaintiffs ship the subject tire and rim to defendant via secured carrier upon completion of plaintiffs' experts' inspections. (Docket No. 120 at p. 5.) Defendants reiterated these requests several times between March and August 2016 and offered to pay the cost of having the tire

shipped to their expert. Id. at pp. 6–7. Following a meet-and-confer teleconference in August 2015, and additional requests thereafter, the parties have still not resolved this issue. Id. at pp. 7–8.

### B. Discussion

 Defendants argue that plaintiffs should be compelled to produce the subject tire because they agreed to do so in the JIA and because defendants' experts cannot complete their reports until they complete inspections and testing on the subject tire. (Docket No. 120 at pp. 9-11.) Plaintiffs argue that, despite having custody of the tire since 2014, their experts have been unable to complete their own inspections of the subject tire because defendants have failed to produce documents containing information needed to perform these inspections. (Docket No. 121 at p. 5.) Plaintiffs also highlight that defendants have had opportunities to inspect the tire, observed the removal of the tire, and recorded the removal of the tire. (Docket No. 121 at p. 4.)

Upon examination of the JIA, the Court finds no language that requires that plaintiffs produce the subject tire to defendants' control. The JIA governed the time, place, and details or the August 19, 2014 joint inspection. (Docket No. 120–3 at p. 1.) The JIA specifically states that after the August 19, 2014 inspection, "[t]he subject tire and its rim will remain under the custody and control of the Claimants' counsel." Id. at p. 2. Regarding future inspections, the JIA states that "[t]he terms of further nondestructive independent and private laboratory inspections by the Parties' experts will be agreed [to] by the Parties or by Court order at a later time." Id.

 The JIA does not require future inspections or grant defendants custody of the subject tire at any point. The Court, therefore, **DENIES** defendants request to compel plaintiff to relinquish custody of the subject tire to defendants. The subject tire will remain in plaintiffs' control, but the Court **ORDERS** that defendant and defendants' experts be allowed to do all necessary non-destructive, non-invasive testing required to

defend against plaintiffs' claims. Additionally, because plaintiff failed to oppose defendants motion to compel regarding the enumerated documents, and because these documents are relevant to the physical state of the subject tire, the Court **GRANTS** defendants' production request regarding these documents. See Docket No. 120 at p. 2. The Court **ORDERS** plaintiffs to produce the following:

(1) the inspection protocol followed by their experts to inspect the tire and rim in question,

(2) the video tape that was supposed to be produced in connection with the removal of the tire from the rim, and

(3) the chain of custody records evidencing the movement of the tire and rim from the vehicle to Plaintiffs' local expert and from there to Plaintiffs stateside experts.

See Docket No. 120 at p. 2.[6]

### CONCLUSION

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** defendants' motion to quash depositions, **GRANTS IN PART** and **DENIES IN PART** plaintiffs' motion to compel documents, (Docket No. 82), and **GRANTS IN PART** and **DENIES IN PART** defendants' motion to compel the subject tire and related documents, (Docket No. 120). **The Court extends the discovery deadline to December 30, 2016** to allow for defendants to produce documents and complete the deposition compelled in this Order by that date. No additional period for discovery will be allowed.

**IT IS SO ORDERED.**

---

6. Defendants also request a signed confidentiality agreement connected to the original depositions, but have made no argument to support an order to compel them. See Docket No. 120 at p.

2; see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (finding waived an undeveloped argument to be waived).