# United States Court of Appeals
## For the First Circuit

No. 20-1087

UNITED STATES OF AMERICA,

Appellee,

v.

JOSE VÁZQUEZ-ROSARIO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Barron, Chief Judge,
Howard and Gelpí, Circuit Judges.

José B. Vélez Goveo, with whom Vélez & Vélez Law Office was on brief, for appellant.
Francisco A. Besosa-Martinez, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Appellate Chief, were on brief, for appellee.

August 17, 2022

**GELPÍ, Circuit Judge.** A jury convicted Defendant-Appellant José Vázquez-Rosario of one count of false impersonation of an employee of the United States in violation of 18 U.S.C. § 912.[1] The indictment and corresponding conviction stem from Vázquez's actions at a traffic stop where he falsely represented to a police officer that he was an agent of the Federal Bureau of Investigation ("FBI"). We affirm.

## I. Background

## A. Facts

We discuss the facts as they were established at trial. On November 29, 2018, three police officers with the Guaynabo Municipal Police Department -- Sergeant Yacira Martínez, Officer Orlando Báez, and Officer Frankyn Nieves -- pulled over a black Lincoln that committed an illegal lane change and ran a red light in Guaynabo, Puerto Rico. When the police officers approached the vehicle, they observed a woman in the driver's seat and a man, later identified as Vázquez, in the passenger seat. Officer Báez

---

[1] The statute in pertinent part states:

> Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 912.

informed the driver of the reason for the stop and asked for her license and registration. The driver produced her license, but the registration she produced was not for the current year. Officer Báez informed her that this would be an additional traffic violation and began to return to the police vehicle to issue the tickets. At that moment, Vázquez opened his car door, stepped out of the car, and told the police officers in an agitated manner that he was a federal agent who investigated corrupt police officers. He told the police officers conducting the traffic stop that he was going to take down their information and request an investigation. Vázquez told them that he had handcuffs for municipal police officers and asked Sergeant Martínez whether the last name "Martínez" sounded familiar to her, a reference to former Police Commissioner Martínez whom Vázquez later claimed he was investigating. At some point during this exchange, Officer Báez did indeed issue two tickets to the driver totaling $75 -- one for the illegal lane change and the other for the incorrect registration.

Vázquez then told Sergeant Martínez that he wanted to speak with the police officers' supervisor, the Commissioner of Police of Guaynabo. Sergeant Martínez called Commissioner Víctor Franco-Rodríguez to explain the situation to him and request that he come to the traffic stop. While she was on the phone, Vázquez approached her and spoke loudly, asserting that he had a federal

- 3 -

agent code name as well as a contact agent that she could presumably contact to verify his claims. Commissioner Franco arrived at the scene of the traffic stop shortly after to speak with Sergeant Martínez and Vázquez. He first pulled Sergeant Martínez aside to learn more about the situation that had transpired. As Commissioner Franco did so, Vázquez began speaking loudly to him, stating that he investigated Guaynabo police officers and Police Commissioner Martínez and that he was FBI. He mentioned again that he had handcuffs for the police officers on the scene and said that he was going to investigate them as well.

Commissioner Franco then began to speak with Vázquez directly. He asked for Vázquez's FBI credentials, to which Vázquez responded that he didn't have to show him anything. Commissioner Franco then decided to contact an FBI agent he knew, Guillermo González, to confirm that Vázquez was an FBI agent.[2] Agent González arrived at the scene and was informed of the unfolding situation by Commissioner Franco. He described Vázquez as "agitated and aggressive." When Agent González began speaking with Vázquez, the latter declined to identify himself as an FBI agent and instead stated that he worked for the FBI and gave Agent González the names of two other agents to corroborate this fact. Agent González

---

[2] At the time, Agent González was the supervisor for the Violent Crimes and Crimes Against Children division of the FBI in San Juan, Puerto Rico.

decided to contact one of the two agents, Miguel Vega, and confirm Vázquez's current status with the FBI. Agent Vega confirmed that Vázquez had worked previously as an FBI source and provided information to the agency. Agent González later confirmed that, at the time of the traffic stop, Vázquez was not a paid active source for the FBI. Additionally, Agent González clarified later at trial that FBI sources are not FBI employees or agents, and are made aware of this fact before they start. After that conversation, Agent González asked the Guaynabo police officers to place Vázquez under arrest and transport him to the FBI office.[3]

Following a grand jury indictment, Vázquez pled not guilty to one count of false impersonation of an employee of the United States in violation of 18 U.S.C. § 912. The case proceeded to trial in August 2019 and, following a three-day trial, a jury found Vázquez guilty. The district court sentenced Vázquez on November 13, 2019 to six months of imprisonment. The sentence imposed is not at issue in this appeal. The timeliness of this appeal, however, is. We turn to that issue first before addressing the remainder of Vázquez's claims.

---

[3] Agent González asked the Guaynabo police officers to transport Vázquez to the FBI facilities because he was alone in his vehicle.

## B. **Timeliness of the Appeal**

As a threshold matter, we must determine whether the appeal was timely. The timeline is as follows: Following the guilty verdict, Vázquez was sentenced on November 13, 2019 and the district court entered final judgment on November 21, 2019. The Federal Rules of Appellate Procedure dictate that criminal defendants have fourteen days to file a notice of appeal after the entry of judgment, making the deadline for Vázquez to appeal December 5, 2019. Fed. R. App. P. 4(b)(1)(A)(I). On November 25, 2019, Vázquez filed a motion for reconsideration of the district court's denial of a sentence of probation. The next day, November 26, 2019, the district court ordered the government to respond to the motion by December 6, 2019. The government responded by the deadline. On December 26, 2019, the district court denied the motion for reconsideration. On December 31, 2019, Vázquez filed his notice of appeal at the district court.

The government argues that Vázquez's appeal is untimely because a motion for reconsideration does not automatically extend the fourteen-day period to file a notice of appeal, and Vázquez neglected to file a motion requesting an enlargement of the time to file an appeal. Cf. United States v. González-Rodríguez, 777 F.3d 37, 38 (1st Cir. 2015) ("[S]elf-styled 'motions for reconsideration of sentence,' unmoored in the rules, do not extend the time for an appeal.").

It is well settled that a district court loses jurisdiction over a case upon the filing of a notice of appeal, United States v. Naphaeng, 906 F.3d 173, 177 (1st Cir. 2018), though we noted in González-Rodríguez "that the filing of such a notice of appeal does not deprive the district court of jurisdiction over a post-judgment motion properly before it." 777 F.3d at 42 (citing United States v. Ortiz, 741 F.3d 288, 291 n.1 (1st Cir. 2014)). Under Federal Rule of Appellate Procedure 4(b)(4), a district court may extend the time to file a notice of appeal "for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b)" "[u]pon a finding of excusable neglect or good cause."[4] This thirty-day extension is in addition to the fourteen-day period allowed by Federal Rule of Appellate Procedure 4(b)(1)(A)(I).

Here, the district court provided no clear indication that it had extended the deadline to file a notice of appeal beyond

---

[4] The Rule in pertinent part states,

Upon a finding of excusable neglect or good cause, the district court may -- before or after the time has expired, with or without motion and notice -- extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b).

Fed. R. App. P. 4(b)(4).

- 7 -

the fourteen-day period.[5]  However, this problem is not fatal to our consideration of Vázquez's appeal.  The deadline provided by Federal Rule of Appellate Procedure 4(b) is not jurisdictional, see United States v. Reyes-Santiago, 804 F.3d 453, 457-58, 478 (1st Cir. 2015); United States v. Lantis, 17 F.4th 35, 38 n.3 (10th Cir. 2021), and, in any event, because we find that Vázquez's appeal fails on the merits, we may assume timeliness arguendo and indeed do so here.  See United States v. Texeira-Nieves, 23 F.4th 48, 52–53 (1st Cir. 2022); Tacuri-Tacuri v. Garland, 998 F.3d 466, 472 (1st Cir. 2021); United States v. Norman, 458 F. App'x 105, 107 n.5 (3d Cir. 2012) (unpublished).  We therefore proceed seriatim to the merits of Vázquez's appeal.

## II. Discussion

### A. Sufficiency of the Evidence

The bulk of Vázquez's arguments on appeal boil down to the insufficiency of the evidence offered for the jury to convict him.  To resolve the same, we must first establish the correct standard of review, on which the parties disagree.  Vázquez states in his brief that we typically review a sufficiency claim de novo, and determine whether any rational jury could have found the defendant guilty beyond a reasonable doubt, United States v.

---

[5]    In the future, we highly encourage district courts to provide a clear indication that, upon a finding of good cause or excusable neglect, the time to file an appeal is extended for thirty additional days as explicitly allowed under Rule 4(b)(4).

Cortes-Caban, 691 F.3d 1, 12 (1st Cir. 2012), but also concedes that where the defendant has failed to object below, the appellate court reviews only for plain error. United States v. Theodore, 354 F.3d 1, 8 (1st Cir. 2003). The government, however, advances that when a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 is not preserved for appeal because it was not made below, the defendant has "forfeit[ed] the benefit of the customary standard of review, thereby negating any claim of evidentiary insufficiency unless affirming the conviction would work a 'clear and gross injustice.'" United States v. Castro-Lara, 970 F.2d 976, 980 n.2 (1st Cir. 1992) (quoting United States v. Cheung, 836 F.2d 729, 730 n.1 (1st Cir. 1988)).[6]

Our precedent unequivocally dictates the outcome that the government urges. It is clear that Vázquez did not make any Rule 29 motion below, waived his Rule 29 arguments at the close of the government's case, and did not renew said arguments at the close of all the evidence. Therefore, we review the sufficiency of the evidence claim only for a clear and gross injustice.

Vázquez argues there was insufficient evidence presented that he obtained a "thing of value" as a result of his impersonation of an FBI agent, which he argues is required by

---

[6] At oral argument, Vázquez conceded that "clear and gross injustice" is the correct standard of review in this case, but did not advance said argument in his brief.

§ 912. This argument is easily resolved. The text of 18 U.S.C. § 912 "creates and describes two separate and distinct offenses." Ekberg v. United States, 167 F.2d 380, 386 (1st Cir. 1948); United States v. Lepowitch, 318 U.S. 702, 704-05 (1943). The first, under the "acts as such" language of the statute, is "false impersonation of a federal official coupled with an overt act in conformity with the pretense." United States v. Rippee, 961 F.2d 677, 678 (7th Cir. 1992); see also United States v. Barnow, 239 U.S. 74, 75 (1915). The second is "false impersonation of a federal official coupled with demanding or obtaining a thing of value." Rippee, 961 F.2d at 678; see also Barnow, 239 U.S. at 75. Vázquez was indicted, charged, and convicted under the "acts as such" modality of the statute rather than the "thing of value" modality. Therefore, Vázquez's arguments on appeal centering on the "thing of value" modality of the statute rather than the "acts as such" modality -- specifically that the government did not prove that he obtained a thing of value because the ticket was issued to the driver rather than to him -- necessarily fail. Because Vázquez was indicted and convicted under the "acts as such" portion of the statute, the government did not need to prove that he also obtained a "thing of value" by his impersonation. See Lepowitch, 318 U.S. at 705 ("[A] person may be defrauded although he parts with something of no measurable value at all.").

Vázquez also posits that his conviction should be reversed on appeal because there was insufficient evidence presented at trial for a jury to convict him of a violation of 18 U.S.C. § 912.  Specifically, he argues the "intent to defraud" remains an inherent part of a § 912 violation which the government must prove, despite the removal of that language by Congress in 1948, a position which is supported by some of our sister circuits.  See United States v. Gayle, 967 F.2d 483, 486 (11th Cir. 1992) (presenting circuit split on "intent to defraud" element).  Though Vázquez recognizes that we "have not yet formally ruled on the issue of whether the government in a § 912 must plead and prove 'intent to defraud,'" he alleges that we have "impliedly joined" those circuits which have held that "intent to defraud" remains an essential element of a § 912 charge, though he offers no support for this proposition.  Vázquez argues that there was insufficient evidence presented at trial proving that he had the intent to defraud while he was impersonating an FBI agent.

Vázquez's brief has an important deficiency which bears on our resolution of his sufficiency of the evidence claim.  In his brief, Vázquez does not attempt to address the clear and gross injustice standard of review and instead only addresses the plain error standard which, as we addressed supra, is inapplicable here.  "The problem for [Vázquez] is that his brief does not mention the clear and gross injustice standard, let alone develop any argument

- 11 -

to meet it. . . . [B]ecause we are not obliged to do a party's work for him, we consider this aspect of his sufficiency claim waived for inadequate briefing." United States v. Charriez-Rolón, 923 F.3d 45, 52 (1st Cir. 2019) (citing United States v. Freitas, 904 F.3d 11, 23 (1st Cir. 2018)).

Even absent this waiver, Vázquez's plain error argument regarding the intent to defraud element does not persuade us. As Vázquez acknowledges in his brief, "[t]he First Circuit has not yet formally ruled on the issue of whether the government in a § 912 case must plead and prove 'intent to defraud.'" Some of our sister circuits have held that the intent to defraud element of a § 912 offense remains, despite Congress's removal of that language, while other circuits have held the opposite. Compare United States v. Guthrie, 387 F.2d 569, 571 (4th Cir. 1967) (holding that "'intent to defraud' is no longer an element of a charge under . . . § 912"), with United States v. Randolph, 460 F.2d 367, 370 (5th Cir. 1972) (holding that "'fraudulent intent' . . . is an essential element in a prosecution under . . . § 912"). As we have previously established, "if a question of law is unsettled in this circuit, and a conflict exists among other circuits, any error in resolving the question will not be 'plain or obvious.'" United States v. Crocco, 15 F.4th 20, 24 (1st Cir. 2021) (quoting United States v. Diaz, 285 F.3d 92, 96 (1st Cir. 2002)). Despite Vázquez's argument to the contrary, "no

- 12 -

plain error occurs when the state of the law is murky." United States v. Sweeney, 226 F.3d 43, 46 (1st Cir. 2000).

Therefore, finding that affirming the conviction would not work a "clear and gross injustice," we so affirm. Castro-Lara, 970 F.2d at 980 n.2.

## B. Touhy Claim

Vázquez's next argument on appeal concerns his request for the testimony of federal officers to corroborate his claims that he was working as an FBI agent at the time of his arrest. Two days before Vázquez's trial was set to begin, he sent an e-mail to the criminal division at the Department of Justice pursuant to United States ex rel. Touhy v. Ragen, 340 U.S. 462, 468 (1951) (upholding regulations which provide for agencies' disclosure of information).[7]   The letter requested the presence of three

---

[7]   When Vázquez made his written Touhy request, he cursorily argued that "Touhy regulations do not apply to criminal cases."  Though he mentions that argument in his briefing to this court with a quotation from United States v. Reynolds, 345 U.S. 1, 12 (1953), he goes no further to develop said argument.  Therefore, we need not address it here.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Vázquez also mischaracterizes the basis of the district court's grant of the motion to quash his Touhy request.  In his brief, he argues that the court "deprived [him] of his constitutional rights" when it "unreasonably allowed the prosecution to invoke its governmental privileges to deprive [him] of that which was material to his defense," namely, the testimony of the three government witnesses.  On the contrary, in granting the government's motion to quash, the district court did not wade

- 13 -

government witnesses to testify about Vázquez's work with the FBI: two Assistant U.S. Attorneys and one FBI agent, all stationed in Puerto Rico. The government promptly responded with a motion to quash the request for testimony, arguing that the letter failed to conform with the Department of Justice's Touhy standards and was overly broad. The government further argued that even if the letter met the Touhy requirements, it nonetheless failed to provide indicia of admissibility, such as the relevance of the testimony, and risked confusing the issues and misleading the jury as contemplated by Federal Rule of Evidence 403. At the first day of trial, the district court granted the government's motion to quash, barring the three individuals from being subpoenaed to testify.[8] In its reasoning, stated orally prior to the start of trial, the

_____

into the murky waters of privilege, but instead agreed with the government that Vásquez's Touhy request was not relevant.

[8] We note the proximity of the Touhy request to the start of trial, that is only two days prior. A review of the docket below reflects that trial was set seventy-four days in advance. Moreover, the district court pushed the start of trial back one week following the defendant's request to do so. As such, we caution prospectively that last-minute Touhy requests without any reasonable explanation of their timing may likely not be seen with favorable eyes. On the other hand, Touhy requests made with advanced time allow both the government and the district court to respond and rule accordingly. Cf. United States v. Nivica, 887 F.2d 1110, 1118 (1st Cir. 1989) ("Given the case-specific nature of criminal trials, the district court must be afforded great latitude in weighing factors such as timeliness, materiality, relevancy, competency, practicality, and utility, as a means of determining whether a subpoena request is well founded.").

district court agreed with the government that the testimony of the subpoenaed witnesses was not relevant to the issues at trial.

On appeal, Vázquez argues that the district court committed reversible error by granting the motion to quash. Specifically, Vázquez argues that his Touhy request was sufficient under the requirements of 28 C.F.R. § 16.23(c), which only requires a "summary of the testimony sought" be provided to the Department of Justice.[9] Vázquez also argues that granting the motion to quash deprived him of testimony that was material to his defense.

Recognizing the district court's broad discretion to resolve discovery disputes, we review the district court's decision on pretrial discovery matters, such as a motion to quash a subpoena, for abuse of discretion. Cabral v. U.S. Dep't of Just., 587 F.3d 13, 22 (1st Cir. 2009); Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003). Therefore, we will reverse the district court's order on appeal

---

[9]    This regulation, which governs the disclosure of information in cases in which the United States is a party, states:

> If oral testimony is sought by a demand in a case in which the United States is a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by the party's attorney setting forth a summary of the testimony sought must be furnished to the Department attorney handling the case or matter.

28 C.F.R. § 16.23(c).

"only 'upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party.'" Heidelberg, 333 F.3d at 41 (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 186 (1st Cir. 1989)).

We find no abuse of discretion as to the district court's decision that Vázquez' proffered witnesses would not be relevant. The proposed testimony of the three government witnesses would have established that Vázquez was a paid informant for the FBI from 2011 until 2017, which is not probative of whether he was an FBI agent in November of 2018 when the traffic stop occurred. As the district court pointed out in its decision, "Anyone can call the FBI at any time. . . . That does not make those folks informants, much less, paid sources, and even more so, special agents." Given our deference to the district court in discovery matters, we find no abuse of discretion and decline to disturb its decision as to this issue.

## III. Conclusion

The decision of the district court is

**AFFIRMED**.