# United States Court of Appeals
## For the First Circuit

No. 19-1584

UNITED STATES OF AMERICA,

Appellee,

v.

LOUIS GARDNER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Lynch, Lipez, and Kayatta,
Circuit Judges.

William S. Maddox for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom
Scott W. Murray, United States Attorney, was on brief, for
appellee.

July 20, 2021

**LIPEZ**, **Circuit Judge**.  Pursuant to a plea agreement, Louis Gardner pled guilty to a variety of drug and firearm offenses in exchange for a 120-month sentence.  While in custody prior to sentencing, he assaulted a fellow inmate, a breach of the plea agreement.  In light of that breach, the government withdrew from the agreement.  When Gardner then moved to withdraw his guilty plea, the government opposed, insisting that Gardner was still bound by the plea.  The district court denied the motion to withdraw and sentenced Gardner to 160 months' imprisonment -- 40 months above the agreed-upon sentence.  Gardner now appeals the denial of his motion to withdraw the plea, as well as the length of his sentence.  Because we agree that Gardner should have been allowed to withdraw his plea, we do not reach the sentencing issue.

## I.

Louis Gardner was charged with six related drug and firearm offenses.  He and the government negotiated a plea agreement.  The agreement explained that "[i]n exchange for the defendant's guilty pleas" on three of the six counts, the government "agrees" to certain sentencing stipulations and to dismiss the remaining counts of the indictment.[1]  It also stated that the parties "stipulate and agree that 120 months' imprisonment

---

[1] Although the plea agreement (and the district court, at times) referred to Gardner's "guilty pleas" (i.e., the pleas to each of the three separate counts), we use "guilty plea" to refer to all three pleas collectively.

is an appropriate disposition of this case," and that the parties intended this sentencing stipulation to be "binding" under Federal Rule of Criminal Procedure 11(c)(1)(C),[2] meaning that "if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A),[3] the plea agreement is null and void and the defendant will be allowed the opportunity to withdraw his guilty pleas."  In addition to other recitals, waivers, and stipulations, the agreement included a breach provision, which specified that if, "before sentencing," Gardner "violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing," the government "may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom."

The district court duly held a change of plea hearing. The court went over the agreement and confirmed that Gardner understood it and was entering into the plea knowingly and voluntarily.  As part of its review, the district court also explained the significance of the stipulated sentence:

> THE COURT:  All right.  So Mr. Gardner, you and the government have agreed that the total sentence that's to be imposed in this . . .

---

[2] Rule 11(c)(1)(C) allows the parties to "agree that a specific sentence or sentencing range is the appropriate disposition of the case," and "binds the court [to the recommended sentence] once [it] accepts the plea agreement."

[3] Rule 11(c)(3)(A) provides that, as to plea agreements containing an agreed-upon sentence pursuant to Rule 11(c)(1)(C), "the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report."

- 3 -

case is 120 months in prison. That's a binding agreement which means if the Court accepts that agreement and imposes that sentence, do you understand you cannot withdraw your guilty plea?

THE DEFENDANT: Yes.

THE COURT: If the court does not accept that binding agreement and does not impose that sentence, do you understand that you would have the opportunity then to withdraw your guilty plea?

THE DEFENDANT: Yes.

In accordance with the agreement, the district court then accepted Gardner's guilty plea on the three counts and set a date for sentencing.

While in custody awaiting sentencing, Gardner assaulted a fellow inmate. Citing the breach provision that allowed it to withdraw from the plea agreement if the defendant committed criminal activity before sentencing, the government moved to withdraw. After a hearing, the district court found, by a preponderance of the evidence, that Gardner did indeed commit the assault, granted the government's motion to withdraw from the plea agreement, and rescheduled sentencing on the previously-entered plea.

Sixteen days after the government's motion to withdraw from the plea agreement was granted, Gardner moved to withdraw the underlying guilty plea. At the hearing on the motion, his counsel argued that, given that "the government has withdrawn from the

- 4 -

agreement," and assuming that "the Court is not going to accept the 120 month[]" stipulated sentence, Gardner "should be allowed the opportunity to withdraw his plea."  The district court denied the motion, stating that, as a matter of fairness, Gardner's loss of the stipulated sentence was "a consequence of his own actions," and "the government's withdrawal from the plea agreement because of Gardner's breach is not a sufficient reason to permit him to withdraw his guilty pleas."  Then, addressing the fact that the agreement allowed Gardner to withdraw his plea "if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A)," the court reasoned that it had not actually rejected the plea agreement, a process which entails its own, somewhat elaborate procedures for rejection under Rule 11(c)(5).[4]  Instead, the court explained that it had simply allowed the government to withdraw (as permitted by the breach provision), meaning that Gardner's right to withdraw the plea was never triggered.

After denying Gardner's motion to withdraw his plea, the district court proceeded to sentencing.  Now unbound by the

---

[4] Specifically, in order to reject a plea agreement under Rule 11(c)(5), a court must, "on the record and in open court (or, for good cause, in camera)": "(A) inform the parties that the court rejects the plea agreement; (B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and (C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated." Fed. R. Crim. P. 11(c)(5).

agreement's 120-month stipulation, it applied the Sentencing Guidelines and ultimately imposed a sentence of 160 months. On appeal, Gardner challenges the denial of his motion to withdraw his plea.

## II.

Guilty pleas and plea agreements are distinct, governed by different parts of Rule 11. See Fed. R. Crim. P. 11(a), (b) (guilty pleas); Fed. R. Crim. P. 11(c) (plea agreements). Although a defendant usually pleads guilty pursuant to a plea agreement, "[g]uilty pleas can be accepted while plea agreements are deferred, and the acceptance of the two can be separated in time." United States v. Hyde, 520 U.S. 670, 674 (1997).

In general, we review a district court's denial of a pre-sentencing motion to withdraw a guilty plea for abuse of discretion. United States v. Rodríguez-Morales, 647 F.3d 395, 397 (1st Cir. 2011). When presented with such a motion, a district court must determine whether there is a "fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); see also United States v. Dunfee, 821 F.3d 120, 127 (1st Cir. 2016). In applying that standard, there is not an "exclusive list of reasons that might allow withdrawal of a plea." United States v. Aker, 181 F.3d 167, 170 (1st Cir. 1999). However, according to case law, relevant considerations include: (1) whether the original plea was knowing, intelligent, and voluntary and in

- 6 -

compliance with Rule 11, (2) the strength of the reason for withdrawal, (3) the timing of the motion to withdraw, (4) whether the defendant has a serious claim of actual innocence, (5) whether the parties had reached (or breached) a plea agreement, and (6) whether the government would suffer prejudice if withdrawal is permitted.  See Dunfee, 821 F.3d at 127; United States v. Tilley, 964 F.2d 66, 72 (1st Cir. 1992).  The overall standard is "liberal," United States v. Kobrosky, 711 F.2d 449, 454 (1st Cir. 1983), and "permissive," United States v. Merritt, 755 F.3d 6, 9 (1st Cir. 2014).[5]

Gardner's argument for allowing his withdrawal turns on the language of his plea agreement.  When interpreting a plea agreement, we apply "[b]asic contract principles." United States v. Newbert, 504 F.3d 180, 185 (1st Cir. 2007).  The touchstone is the "defendant's reasonable understanding" of the agreement. United States v. Conway, 81 F.3d 15, 17 (1st Cir. 1996).[6]

---

[5]  To be sure, we have questioned whether the standard is quite as liberal as some of our older cases suggest.  See United States v. Torres-Rosario, 447 F.3d 61, 66 (1st Cir. 2006) ("Although older case law endorses a liberal approach to pre-sentence plea withdrawals, it is questionable how far this view has survived the pressure of growing dockets and an increasing appreciation of the grim dynamics of plea bargaining, including the prevalence of 'buyer's remorse' among those who have pled." (citations omitted)).  But we have not actually abdicated the "liberal" standard.  See, e.g., Merritt, 755 F.3d at 11 (noting the prevailing liberal standard while cautioning that "liberal allowance is not to be confused with automatic allowance").

[6] See also United States v. Gregory, 245 F.3d 160, 166 (2d Cir. 2001) (considering "the 'reasonable meaning' of the parties'

Our first task, then, is to determine the parties' reasonable understanding of the agreement, specifically as to whether Gardner would be permitted to withdraw his guilty plea if the government withdrew from the agreement because of Gardner's breach.

In our view, that question is resolved by the agreement itself, which states: "[I]f the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the defendant will be allowed the opportunity to withdraw his guilty pleas." Although this "opportunity to withdraw" provision refers to the court not accepting the agreement under Rule 11(c)(3)(A), it does not say that the right to withdraw is limited to any particular reason for non-acceptance. Rather, it says that Gardner will have the option to withdraw his plea if the event contemplated by the language -- the acceptance of the plea agreement under Rule 11(c)(3)(A) and the imposition of the stipulated sentence -- did not occur for any reason. Here, undisputedly, that event never occurred.

---

overall agreement"); United States v. Cruz-Romero, 848 F.3d 399, 401 (5th Cir. 2017) ("In examining the government's compliance with its promises in the plea agreement, we ask 'whether the Government's conduct was consistent with the parties' reasonable understanding of the agreement'" (quoting United States v. Harper, 643 F.3d 135, 139 (5th Cir. 2011))).

In denying Gardner's motion to withdraw his plea, therefore, the district court misread the "opportunity to withdraw" provision. It first determined that the agreement allowed Gardner to withdraw the plea only if the court "'reject[ed]' the plea agreement under Rule 11(c)(3)(A) and (c)(5)." And then it reasoned that:

> In this case . . . the court did not "reject" the plea agreement under Rule 11(c)(3)(A) and (c)(5). In granting the government's motion to withdraw from the agreement, the court enforced . . . the plea agreement, which permitted the government to withdraw if Gardner engaged in criminal activity. . . . Gardner cannot transform his breach of the plea agreement, which cost him his right to receive the agreed-upon sentence, into a rejection of the agreement by the court.

We see two difficulties with the court's approach. First, while the district court was undoubtedly "enforcing" the agreement by allowing the government to withdraw in light of Gardner's breach, that enforcement is only one half of the equation. Both parties to the agreement have a claim to its enforcement. The second question is what impact the government's withdrawal had on Gardner's rights -- and specifically, whether Gardner remained bound by his guilty plea or had a right to withdraw it.

On that question, the district court, in evaluating whether it "rejected" the agreement, focused on a word that does not appear in the plea agreement. As we have seen, the

"opportunity to withdraw" provision is worded differently.  It permits withdrawal of the plea if the district court "will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A)." And, as we have noted, the court indisputably did not accept the agreement.  Said differently, the agreement's reference to "not accept" is a broader term than "reject."  "Not accepting" encompasses every situation in which the court does not actually impose the stipulated sentence; "rejecting" the agreement under Rule 11 is just one of those situations.

While not necessarily dispositive, it is telling that the district court seemed to endorse the correct reading of the "opportunity to withdraw" provision at the change of plea hearing:

> THE COURT:  All right.  So Mr. Gardner, you and the government have agreed that the total sentence that's to be imposed in this . . . case is 120 months in prison.  That's a binding agreement which means if the Court accepts that agreement and imposes that sentence, do you understand you cannot withdraw your guilty plea?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  If the court does not accept that binding agreement and does not impose that sentence, do you understand that you would have the opportunity then to withdraw your guilty plea?
>
> THE DEFENDANT:  Yes.

These statements suggest that, consistent with the agreement, there were two -- and only two -- mutually exclusive outcomes: if

- 10 -

the court "accept[ed] the agreement and impose[d] that sentence," Gardner would not be able to withdraw his guilty plea, whereas if it "d[id] not accept that binding agreement and d[id] not impose that sentence," Gardner would have the opportunity to withdraw his guilty plea.

The dissent disagrees with our reading of the agreement. It suggests that the agreement "explicitly requires the district court to indicate that it will not accept the agreement" in order to trigger Gardner's withdrawal right. However, nothing in the operative phrase ("if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A)") requires any kind of affirmative statement. Rather, the language simply establishes a future condition which, if not satisfied, will trigger a specified consequence. Therefore, once it was clear that the district court would not accept the agreement, Gardner had a right to withdraw his plea. The dissent, in effect, is introducing a further requirement: that the district court had to affirmatively reject the agreement. While the agreement could have been written that way, it was not.[7]

---

[7] We note that, if the agreement had been written to give Gardner the right to withdraw only if the district court affirmatively rejected the agreement, it would simply be reciting what Rule 11 already guarantees. See Fed. R. Crim. P. 11(c)(5) (requiring the court, if it "rejects a plea agreement" specifying a sentence pursuant to Rule 11(c)(1)(C), to "give the defendant an opportunity to withdraw the plea").

The dissent also suggests that "[t]he district court's actions demonstrate that it accepted the plea agreement." That view of what occurred is unsupportable. "Accepting a plea agreement" is a formal act under the Rules and triggers serious consequences and obligations. Rule 11(c)(1)(C) "binds the court [to the recommended sentence] once [it] accepts the plea agreement." Obviously, the court never imposed the recommended sentence of 120 months. It imposed a sentence of 160 months. Additionally, Rule 11(c)(5) provides that, "[i]f the court accepts the plea agreement" proposing a recommended sentence, it must inform the defendant that "the agreed disposition will be included in the judgment." Here, at the change of plea hearing, the court accepted Gardner's guilty plea but deferred a decision on the recommended sentence. It did not inform Gardner that the recommended sentence would be included in the judgment or state that he would be sentenced as provided in the agreement. Under no plausible construction of the rules or the proceedings, then, did the district court accept the agreement, in fact or constructively.

Additionally, nothing else in the agreement suggests that the "opportunity to withdraw" provision should not be taken to mean what it says. The breach provision itself says nothing about the defendant's right of withdrawal after a breach, explaining only that "if, before sentencing, [Gardner] violates any term or condition of this Plea Agreement, engages in any

- 12 -

criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom." That is, the breach provision is silent about whether Gardner would be held to his guilty plea, despite the government's withdrawal, or whether, in light of the government's withdrawal, he would be permitted to withdraw his plea.

Similarly, nothing in the general law of plea bargaining or our case law precludes Gardner from withdrawing his guilty plea in these circumstances. To the contrary, "it is generally accepted that 'when a defendant breaches his plea agreement, the Government has the option to either seek specific performance of the agreement or treat it as unenforceable' (at least absent language in the plea agreement specifying fewer or other remedies)." 5 Wayne R. LaFave et al., Crim. Proc. § 21.2(e) (4th ed. 2020) (quoting United States v. Cimino, 381 F.3d 124, 128 (2d Cir. 2004)). In this context, "specific performance" means that the government can enforce the remaining provisions of the agreement and hold the defendant to the guilty plea. See United States v. Alexander, 869 F.2d 91, 94-95 (2d Cir. 1989). If the government instead chooses to treat the entire agreement as unenforceable (sometimes referred to as "cancellation"), the presumption is that the defendant may withdraw his plea, unless "the plea agreement itself . . . describe[s] the government's remedies in such a fashion as to

foreclose plea withdrawal by the defendant in these circumstances." 5 Wayne R. LaFave et al., Crim. Proc. § 21.2(e). Here, as we have explained, the plea agreement did not foreclose plea withdrawal by the defendant in the event of his own breach.

The government cites our decision in United States v. Tilley, 964 F.2d 66 (1st Cir. 1992), for the proposition that a defendant should not be able to withdraw a plea because of his own breach of a plea agreement. Like Gardner, Tilley breached his plea agreement by committing a crime (in Tilley's case, by perjuring himself before a grand jury and at a criminal trial). Id. at 69. Facing the loss of certain benefits under the agreement, Tilley then moved to withdraw his plea. Id. The district court denied the motion, and we affirmed. Id. at 73. We first determined that the court did not err in finding that Tilley breached the agreement. Id. at 72. Then, after analyzing the appropriate factors, we concluded that the court did not abuse its discretion in finding that there was not a "fair and just reason" to permit withdrawal. Id. at 72-73.

Some of our language in the opinion suggests that Tilley was foreclosed from withdrawing his plea simply because he breached his agreement by committing a crime. See id. at 73 (in arguing for the opportunity to withdraw his plea, we said, Tilley "overlooks the fact that he did indeed violate the plea agreement by engaging in behavior which constitutes a crime"). But as the

- 14 -

rest of the opinion makes clear, Tilley's holding relies on the specific language of Tilley's plea agreement, which provided that, if Tilley violated the agreement, "the Government had the option to declare the agreement null and void, or to bring the failure to fully cooperate to the attention of the court." Id. at 71 n.17. In response to Tilley's breach, the government simply chose the latter, specifically-provided remedy, which did not trigger any right to withdraw the plea. See id. at 73 ("In view of a violation by appellant of the plea agreement, the Government was entitled to bring all factors related to said violation to the attention of the court."). Here, there is no analogous remedy specified in the plea agreement. The plea agreement does not make clear that the defendant would be bound to the plea if the government opted to withdraw from the agreement.

In sum, this is not a case where the plea agreement specifies that "if [the defendant] committed new crimes, he would be bound to his guilty plea even if the Government exercised its right to rescind the [plea] agreement." United States v. Gregory, 245 F.3d 160, 166 (2d Cir. 2001). To the contrary, the agreement indicated (and the district court confirmed at the change of plea hearing) that Gardner would be able to withdraw his plea if the court did not accept the agreement -- and the court did not accept the agreement.

With that understanding of the agreement in mind, we proceed to consider whether there is a fair and just reason to permit withdrawal of Gardner's plea.

**IV.**

As we have noted, the substantive standard for evaluating a motion to withdraw a guilty plea in the trial court (and the standard that informs our review of the trial court's exercise of discretion in denying a motion to withdraw a guilty plea) is whether there was a "fair and just reason" for withdrawal. The relevant considerations include: (1) whether the plea was knowing and voluntary and in compliance with Rule 11, (2) the strength of the reason for withdrawal, (3) the timing of the motion to withdraw, (4) whether the defendant has a serious claim of actual innocence, (5) whether the parties had reached (or breached) a plea agreement, and (6) whether the government would suffer prejudice if withdrawal is allowed. See Tilley, 964 F.2d at 72.

Three of the considerations favor withdrawal. First, the reason for withdrawal is highly compelling: the agreement explicitly guaranteed Gardner the opportunity to withdraw his plea in these circumstances. This reason is far from a mere "second thought[] about some fact or point of law, or about the wisdom of his earlier decision." United States v. Parrilla-Tirado, 22 F.3d 368, 371 (1st Cir. 1994) (citations omitted). Indeed, it goes to the heart of the bargain that Gardner struck with the government.

- 16 -

Second, Gardner moved to withdraw his guilty plea promptly. He did so only sixteen days after the court granted the government's motion to withdraw from the plea agreement, when Gardner first learned that the court would not be accepting the agreement. Although we typically measure any delay from the entry of the guilty plea, see Ramos, 810 F.2d at 313, we have recognized that a different approach may be warranted in certain circumstances. For example, we observed that, when a motion to withdraw is motivated by post-plea developments in a separate case, it may not be correct to "rel[y] on the . . . passage of time between the plea and the motion to withdraw it as an indication that [the defendant] was simply employing sharp tactics," at least when the motion to withdraw "was filed so soon after the events in the [other] case." United States v. Isom, 580 F.3d 43, 53 n.15 (1st Cir. 2009). In the present circumstances, we consider the sixteen-day delay to be the appropriate measure for evaluating promptness, as Gardner had no reason to move to withdraw earlier. And even though we have held a delay as brief as thirteen days against a defendant, see Ramos, 810 F.2d at 313, the delay here is certainly on the shorter side, and we have countenanced much longer delays when other considerations favor withdrawal, see United States v. Daniels, 821 F.2d 76, 79 (1st Cir. 1987) (allowing withdrawal after ten-week delay).

- 17 -

Third, there does not appear to be any prejudice to the government, beyond the burdens that inevitably accompany any withdrawal -- namely, those of processing the withdrawal and negotiating a second plea or proceeding to trial. Indeed, there is no suggestion by the government of any kind of prejudice, such as any difficulty in tracking down witnesses or otherwise preparing for a potential trial. See Kobrosky, 711 F.2d at 455 (explaining that "[t]he most common form of prejudice is the difficulty that the government would encounter in reassembling its witnesses"). The dissent, on the government's behalf, speculates about possible kinds of prejudice, but it is not our role to make an argument that the government never makes.

To be sure, on the negative side of the balance, there are also three factors. Gardner has not advanced any plausible theory of innocence.[8] But this deficiency is not fatal; it just "counsels against" allowing withdrawal. United States v. Mercedes Mercedes, 428 F.3d 355, 360 (1st Cir. 2005). Additionally, he unquestionably breached the agreement by committing an assault, a significant breach to be sure. And, finally, there is no

---

[8] According to the plea agreement, Gardner was arrested while driving home, armed with a gun, from a drug purchase. Also in the vehicle were a confidential informant and an eventual co-defendant. Gardner had previously sold drugs to the informant on two occasions. Gardner argues that if his guilty plea were withdrawn, he would have the opportunity to move to suppress evidence and raise an entrapment defense.

indication that the guilty plea was not "knowing, intelligent, and voluntary" at the time it was made. United States v. Adams, 971 F.3d 22, 38 (1st Cir. 2020). The district court scrupulously followed the technical requirements of Rule 11, and Gardner voluntarily pled guilty in accordance with the agreement as written and as explained by the district court.

Despite these countervailing considerations, we conclude that the strength of Gardner's reason for withdrawal so far outweighs the offsetting factors that the inquiry tilts in his favor. The government failed to recognize that the plea agreement, by its terms, gave Gardner the right to withdraw his plea under the circumstances of this case. That failure, sanctioned by the court with its denial of Gardner's motion to withdraw his plea, was tantamount to a breach of the plea agreement by the government. Given the importance of contract principles to the enforcement of plea agreements, see Newbert, 504 F.3d at 185, and the other factors cited in Gardner's favor, there was a fair and just reason for the withdrawal of Gardner's plea, and the district court abused its discretion in concluding otherwise. [9]

---

[9] The dissent also maintains that any prejudice to the government should be considered only after Gardner has met his burden on the initial five factors (and thereby established some good reason for withdrawal). Some of our cases do suggest such a bifurcated analysis. See, e.g., United States v. Pellerito, 878 F.2d 1535, 1537 (1st Cir. 1989) ("If a defendant advances a plausible reason, the court should also weigh the prejudice, if any, to the government."). But other cases of ours simply list

- 19 -

**V.**

We close with two additional points. The government and the dissent argue that allowing a plea withdrawal in these circumstances would, effectively, reward Gardner for his own breach. Even worse, the government and dissent suggest, such a decision would encourage future defendants to deliberately breach their plea agreements in the hope of getting out of their pleas.[10]

We are unpersuaded. In the face of a defendant's strategic breach, the government will not be obligated to cancel the agreement and concede to the withdrawal of the plea. Rather, as the non-breaching party, the government will have the option of how to respond. The government might elect specific performance: that is, keep the rest of agreement in place, in which case the defendant would be stuck with the same plea, plus, potentially, additional exposure for a new crime. See Cimino, 381 F.3d at 128 n.3. Alternatively, the government might choose to void the agreement, concede to withdrawal of the original plea, and

---

prejudice as one factor among the others. See, e.g., United States v. Dunfee, 821 F.3d 120, 127 (1st Cir. 2016); United States v. Isom, 580 F.3d 43, 52 (1st Cir. 2009); United States v. Kobrosky, 711 F.2d 449, 455 (1st Cir. 1983). Here, even if we adopted the dissent's preferred approach, we would still find that Gardner had established a plausible reason for withdrawal based on the initial five factors -- in particular, the strength of the reason for withdrawal.

[10] To be clear, there is no argument or indication here that Gardner committed the assault in order to facilitate his plea withdrawal.

"demand[] that [the defendant] either plead guilty a second time or go to trial." Id. In the latter case, the price is high: a defendant would lose the benefits of the existing plea agreement (including any agreed-upon sentence and benefit for acceptance of responsibility) and, if he breached by committing a crime, face the possibility of a new prosecution.

Additionally, of course, the government can avoid a repetition of the scenario here by being clearer in future plea agreements about the consequences of a defendant's breach (i.e., by explicitly specifying in the agreement that the defendant will still be held to the guilty plea even if the government exercises its right to withdraw). See United States v. Rivera, 954 F.2d 122, 125 (2d Cir. 1992) (instructing that "[t]he government should make it absolutely clear in a plea agreement that a breach by the defendant releases the government from its obligation to recommend leniency but does not release the defendant from the plea of guilty"). The prosecution, defendants, and the courts would all benefit from this additional clarity.

**VI.**

For the reasons set forth herein, Gardner must be permitted to withdraw his guilty plea. We vacate the judgment. So ordered.

**- Dissenting Opinion Follows -**

- 21 -

**LYNCH**, <u>Circuit Judge</u>, **dissenting.** With respect, I believe the majority got this wrong and departed from controlling law at every key point in its analysis. After entering into a plea agreement, Gardner assaulted a codefendant and possible witness against him. This assault triggered a provision in his plea agreement giving the government, but not Gardner, the right to "consider [Gardner's] conduct to be a breach of the Plea Agreement and . . . withdraw" from it. The government exercised this right. The majority opinion allows Gardner to also withdraw from the plea agreement due to his own breach. In doing so, it concludes that the district court never accepted the plea agreement under Rule 11, directly contradicting the fact that the court enforced the plea agreement. Further, the majority erroneously reads into the plea agreement terms not bargained for by the defendant, disadvantaging the government. Beyond that, the majority erroneously holds that the district court abused its discretion when it did not allow Gardner to withdraw his plea and posits that no harm will come from its decision. I disagree on all of these key points.

The majority begins its analysis by saying that the plea agreement's "opportunity to withdraw" provision gives Gardner the right to withdraw his plea. That provision reads: "[I]f the Court will not accept the plea agreement under Fed. R. Crim. P.

11(c)(3)(A), the plea agreement is null and void and [Gardner] will be allowed the opportunity to withdraw his guilty pleas."

When presented with a plea agreement like Gardner's, Rule 11 says that a court "may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report [('PSR')]." Fed. R. Crim. P. 11(c)(3)(A). The text is clear that, even if the court chooses to defer its decision pending review of the PSR, the court has to choose between two options: accepting or rejecting the plea agreement. See United States v. Hyde, 520 U.S. 670, 675 (1997) (discussing the district court's ability to "defer its decision about whether to accept [a] [Rule 11(c)(1)(C)] agreement (emphasis added)); United States v. Fokker Servs. B.V., 818 F.3d 733, 745 (D.C. Cir. 2016) (describing "a district court's authority to 'accept' or 'reject' a proposed plea agreement under Rule 11"); see also Fed R. Crim. Proc. 11(c) (outlining the procedures for "[a]ccepting a [p]lea [a]greement" in Rule 11(c)(4) and "[r]ejecting a [p]lea [a]greement" in Rule 11(c)(5)).

The majority concedes that the district court never rejected the plea agreement.[11] It should have then concluded that

---

[11] As the majority recognizes, a district court must follow the procedures in Rule 11(c)(5) to reject a plea agreement, which it did not do here. If the district court had rejected the agreement, there would be no need to interpret it. Gardner would have been permitted to withdraw his plea pursuant to Rule 11(c)(5)(B).

the court either deferred acceptance of the agreement or accepted it outright. In either case, that would mean that the "opportunity to withdraw" provision does not apply to Gardner. Instead, the majority erroneously holds that the provision applies (and Gardner can withdraw his plea) because, even though the district court did not reject the agreement, the majority says that the district court did not accept the agreement.[12]

This holding is inconsistent with the text of the plea agreement. The "opportunity to withdraw" provision says that if the court "will not accept" the agreement, then the agreement becomes null and void. (Emphasis added). The majority's reading ignores the word "will." Non-acceptance alone would not be enough.[13] The agreement explicitly requires the district court to indicate that it will not accept the agreement, something it did not do.

---

[12]    The majority erroneously reads the change of plea hearing transcript to say that the district court had "two -- and only two -- mutually exclusive" options. In the majority's view, the district court could either (1) accept the plea agreement and impose the sentence in the agreement or (2) not accept the agreement and not impose that sentence. This reading ties acceptance of the agreement to sentencing, making it impossible for the court to accept the plea agreement until a defendant is sentenced. That is flatly inconsistent with Rule 11.

[13]    If non-acceptance alone were enough, then the plea agreement would have become null and void when the district court, consistent with Rule 11, chose to defer acceptance of the agreement at Gardner's change of plea hearing. Fed. R. Crim. P. 11(c)(3)(A).

Indeed, it did the opposite. The district court's actions demonstrate that it accepted the plea agreement. The district court said it relied on the "facts . . . set forth in the offense conduct paragraph of the plea agreement" when it accepted Gardner's guilty plea during his change of plea hearing and later said it was enforcing, not rejecting, the agreement when it allowed the government to withdraw from the agreement due to Gardner's breach. See United States v. Soloff, 993 F.3d 240, 244 (4th Cir. 2021) ("Where the record furnishes sufficient evidence to conclude that a district court constructively accepted the plea agreement, the court's failure to explicitly accept the agreement will not undo the parties' bargain."); United States v. Leyva-Matos, 618 F.3d 1213, 1216 n.1 (10th Cir. 2010) (concluding that "the district court . . . constructively accepted the plea agreement by working within its terms and accepting certain stipulations while rejecting others"); United States v. Brown, 571 F.3d 690, 693 (7th Cir. 2009) (finding that a district court accepted a plea agreement when "every aspect of the court's disposition . . . was consistent with an acceptance of the plea agreement"); United States v. Skidmore, 998 F.2d 372, 375 (6th Cir. 1993) ("[T]he court's failure to elect clearly one of the options specified in [Rule 11(c)'s predecessor] amounted to an acceptance of the plea agreement."). The majority uses the "opportunity to withdraw" provision (which, if it had actually been triggered, would have voided the agreement

- 25 -

entirely) to imply a new and unbargained-for term into the agreement.[14] Doing so upsets the bargain the parties struck. I would conclude that because the district court never said it would not accept the agreement, did not treat the agreement as null and void, and in fact enforced the plea agreement's breach provision, Gardner has no opportunity to withdraw.

Even if Gardner did have an opportunity to withdraw his guilty plea under the plea agreement, Gardner cannot withdraw this plea unless he can "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. Proc. 11(d)(2)(B). We review for abuse of discretion the district court's determination that Gardner has not shown a fair and just reason. See United States v. Merritt, 755 F.3d 6, 9 (1st Cir. 2014). There was no abuse of discretion here.

To determine if a fair and just reason for withdrawal exists, district courts consider five factors: "(1) the timing of defendant's change of heart; (2) the force and plausibility of the

---

[14] At times, the majority implies that the government is choosing to treat the agreement as either unenforceable or null and void. This implication misunderstands the government's position. The government wants to treat the agreement as enforceable, enforce the provision allowing it to withdraw from the agreement, and hold Gardner to his guilty plea pursuant to the agreement. The majority's discussion of the "general law of plea bargaining" governing what happens when the defendant breaches a plea agreement is not relevant here because the plea agreement explicitly says what happens: if Gardner breaches, the government (but not Gardner) has the right to withdraw from the plea agreement.

reason; (3) whether the defendant has asserted his legal innocence; (4) whether the parties had reached (or breached) a plea agreement; and (5) most importantly, whether the defendant's guilty plea can still be regarded as voluntary, intelligent, and otherwise in conformity with Rule 11 . . . in light of the proffered reason and the disclosed circumstances." United States v. Tilley, 964 F.2d 66, 72 (1st Cir. 1992). If, and only if, a fair and just reason exists, then the district court considers whether the government will be prejudiced by the withdrawal of the plea. See United States v. Adams, 971 F.3d 22, 38 (1st Cir. 2020) ("If the totality of [the other five factors] militates in favor of allowing the plea to be withdrawn, the court should then consider whether, and to what extent, withdrawal would prejudice the government."); United States v. Flete-Garcia, 925 F.3d 17, 24 (1st Cir. 2019); United States v. Marrero-Rivera, 124 F.3d 342, 347 (1st Cir. 1997); United States v. Muriel, 111 F.3d 975, 978 (1st Cir. 1997); United States v. Desmarais, 967 F.2d 17, 19 (1st Cir. 1992); United States v. Ramos, 810 F.2d 308, 313 (1st Cir. 1987). Here, the district court correctly concluded that no fair and just reason for withdrawal exists. All of the factors cut against Gardner.

On the first factor, Gardner pleaded guilty in October 2018 and moved to withdraw his plea almost four months later, in

February 2019.[15]  We have held that waiting only thirteen or fourteen days from the date of the original plea cuts against the defendant.  See Ramos, 810 F.2d at 313 (1st Cir. 1987); Nunez Cordero v. United States, 533 F.2d 723, 726 (1st Cir. 1976).  That is because a quick withdrawal might indicate that the original plea was "made in haste," Nunez Cordero, 533 F.2d at 726, and that the request for withdrawal is not being made "to gain personal advantage," Ramos, 533 F.2d at 313; see also United States v. Fernández-Santos, 856 F.3d 10, 18 (1st Cir. 2017) ("The timing of a motion to withdraw a guilty plea is important . . . because it is 'highly probative of motive.'") (quoting United States v. Doyle, 981 F.2d 591, 595 (1st Cir. 1992)); United States v. Sanchez-Barreto, 93 F.3d 17, 24 (1st Cir. 1996) ("[Defendants] belated plea-withdrawal motions substantially weakened [their] claims that their guilty pleas resulted from confusion or coercion.").  The four-month delay here shows that Gardner's request to withdraw was

_____

[15]    The majority measures the timing of the plea withdrawal as "sixteen days after the court granted the government's motion to withdraw from the plea agreement."  The majority ignores the fact that the reason we consider timing at all is because it informs whether the defendant's original plea was knowing and voluntary and whether the defendant is trying to strategically withdraw the plea.  Even in United States v. Isom, 580 F.3d 43, 53 n.15 (1st Cir. 2009), on which the majority relies, the Court noted that the delay in filing a withdrawal motion after the original plea was relevant and cut against the defendant.  See id. (explaining that the "delay works to [the defendant's] detriment" when "his claim of innocence did not depend on the events in the companion case, but could have been raised earlier").

- 28 -

to gain personal advantage, not because he made his original plea too hastily.

As to the second factor, Gardner wants to withdraw his guilty plea because he chose to assault his codefendant. The majority's holding "would allow the defendant to withdraw his guilty plea simply on a lark" after he "has sworn in open court that he actually committed the crimes, after he has stated that he is pleading guilty because he is guilty, after the court has found a factual basis for the plea, and after the court has explicitly announced that it accepts the plea." Hyde, 520 U.S. at 676. It "debases the judicial proceeding at which a defendant pleads and the court accepts his plea" by "degrad[ing] the otherwise serious act of pleading guilty into something akin to a move in a game of chess." Id. at 676-77. Allowing defendants to benefit by breaching their plea agreements makes it harder for the government to enforce plea agreements. The majority opinion forces the government to either excuse breaches or void plea agreements and take on the costs and risks associated with allowing defendants to withdraw their guilty pleas. If defendants can escape their plea agreements through intentional breaches, they may choose to gamble on future acquittals by breaching. Encouraging breaches in this way will cause defendants to treat plea agreements as disposable and to take their terms less seriously. The "force and

plausibility" of Gardner's reason therefore does not support withdrawal.  Tilley, 964 F.2d at 72.

The majority agrees that the remaining three factors cut against Gardner.  Gardner has made no claim of innocence, "an 'important factor' in determining whether there is fair and just reason to allow him to withdraw his plea."  United States v. Daniels, 821 F.2d 76, 79 (1st Cir. 1987) (quoting United States v. Kobrosky, 711 F.2d 449, 455 (1st Cir. 1983)).  He admits that he is responsible for breaching the agreement by assaulting his codefendant.  See Tilley, 964 F.2d at 73.  And his plea was knowing and voluntary, which is the most important factor in the analysis.  See United States v. Muriel, 111 F.3d 975, 978 (1st Cir. 1997).  By the majority's own count, three factors, including the most important one, do not support withdrawal.  Only two support it.[16] I do not see how the majority can conclude that the district court committed a "demonstrable abuse of discretion" here in holding that no fair and just reason existed for Gardner to withdraw his plea.  See Marrero-Rivera, 124 F.3d at 348 ("[W]e accord considerable deference to the firsthand assessment ultimately made

---

[16]    The majority says there is no prejudice to the government and that this fact helps Gardner.  Even if this were true, prejudice is only relevant if the totality of the other factors supports withdrawal.  See United States v. Adams, 971 F.3d 22, 38 (1st Cir. 2020).

by the district court, which must be affirmed absent a demonstrable abuse of discretion.").

Finally, even if a fair and just reason for withdrawal did exist, I strongly disagree that the government's mere assertion of prejudice is insufficient. The majority's decision will obviously cause harm in general and clearly, quite specifically on the facts of this case. The majority's result is not a simple matter of the government reinstating the original charges. The events leading to Gardner's prosecution occurred in April 2017, and it is self-evident that the government will be prejudiced by having to prosecute Gardner more than four years after the fact.

The government will likely have difficulty securing witnesses.[17] After so much time has passed, it is likely that some witnesses could not reliably testify against Gardner. See United States v. Allard, 926 F.2d 1237, 1243 (1st Cir. 1991) (holding that the fact that a "witness against [the defendant] is no longer available to testify" "clearly . . . constitutes the kind of prejudice that may be considered under . . . the 'fair and just reason' standard"); Kobrosky, 711 F.2d at 455 ("The most common

---

[17] Gardner pleaded guilty while the government was negotiating plea agreements with his codefendants and the government did not require any of them to testify against Gardner as part of their plea deals. Gardner also assaulted one of his codefendants, who was in a wheelchair at the time, for being a "rat" and "ratt[ing] on his case," which could discourage his other codefendants from testifying against him.

form of prejudice is the difficulty that the government would encounter in reassembling its witnesses; and the longer the delay in moving for a plea withdrawal, the greater this prejudice is likely to be."). Further, a confidential informant was important to the government's case. There is no evidence that this informant is still alive or able to testify against Gardner.

Finally, much of the delay prejudicing the government here is attributable to Gardner, who deliberately prolonged this appeal (perhaps for tactical reasons) by seeking briefing extensions for almost eight months. See Allard, 926 F.2d at 1243 (explaining that "a delay that prejudices the government's case is a factor weighing against withdrawal" when "the defendant can be blamed for the delay"). Gardner's brief was supposed to be filed in December 2019, before the COVID-19 pandemic. His counsel repeatedly requested extensions, many of which were totally unrelated to the pandemic. In all, he received ten extensions and had to be ordered to file a brief by August 14, 2020. Such delay tactics should not be rewarded.

I respectfully dissent.