# United States Court of Appeals
## For the First Circuit

No. 22-1677

UNITED STATES,

Appellee,

v.

GUILLERMO GONZÁLEZ-SANTILLAN,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]


Before

Rikelman, Hamilton,* and Thompson,
Circuit Judges.


Raúl S. Mariani Franco, for appellant.

Ricardo A. Imbert-Fernández, Assistant United States
Attorney, with whom Mariana E. Bauzá-Almonte, Assistant United
States Attorney, Chief, Appellate Division, and W. Stephen
Muldrow, United States Attorney, were on brief, for appellee.


July 11, 2024


---

*Of the Seventh Circuit, sitting by designation.

THOMPSON, **Circuit Judge**.  A person absconds when he "depart[s] secretly and hide[s] [himself]."  Merriam Webster, https://www.merriam-webster.com/dictionary/absconds (last visited June 10, 2024) [https://perma.cc/4C43-7TLW].  That's precisely what Appellant Guillermo González-Santillan ("González-Santillan") did.  In 2009, González-Santillan fled Puerto Rico to evade his sentencing hearing for conspiracy to commit money laundering after entering into -- and pleading guilty pursuant to -- a plea agreement with the government.  After being on the run for thirteen years, González-Santillan was eventually caught in the Dominican Republic and returned to the United States, where he awaited sentencing.  However, now González-Santillan faced a recommended two-point obstruction-of-justice sentencing enhancement for his abscondment.

The upshot.  Currently, González-Santillan is serving a seventy-month term of imprisonment.  In this appeal, he asks us to vacate his sentence and judgment and to remand because, in his telling, the district court erred in imposing the enhancement.  On review, we aren't persuaded and therefore decline the invitation to let González-Santillan escape his sentence.

## HOW GONZÁLEZ-SANTILLAN GOT HERE[1]

Beginning in 2007, González-Santillan conspired with his co-defendants to launder drug money. As a part of their scheme, they moved drug money belonging to Colombian traffickers into various United States bank accounts. Collectively their conspiracy delivered deposits of over $2,000,000, and González-Santillan himself was involved in the delivery of over $1,500,000 for depositing. This all came to a head in 2008 when González-Santillan was indicted by a grand jury in the District of Puerto Rico on one count of conspiring to commit money laundering and five counts of aiding and abetting money laundering. In due course, González-Santillan and the government struck a plea deal in which González-Santillan agreed to plead guilty to conspiracy to commit money laundering (count one) in exchange for the government's dismissal of his other counts at sentencing (counts two through six).[2]

---

[1] We glean the relevant facts from the plea agreement, presentence investigation report, and transcript of the sentencing hearing. See United States v. Ubiles-Rosario, 867 F.3d 277, 280 n.2 (1st Cir. 2017); see, e.g., United States v. Lasalle González, 857 F.3d 46, 52 (1st Cir. 2017).

[2] González-Santillan pled guilty to one count of conspiracy to commit money laundering under 18 U.S.C. § 1956(h), which in relevant part provides that "[a]ny person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."

Per the plea agreement, González-Santillan landed an adjusted offense level of twenty-five giving him an advisory guideline range of fifty-seven to seventy-one months' imprisonment. As relevant to this appeal, the plea agreement provided that "[t]he parties agree[d] that no other adjustments or departures [were] applicable in this case nor [would] be sought by the parties" and that the government reserved its right "to dispute sentencing factors or facts material to sentencing." The United States Pretrial and Probation Office ("USPO") prepared a presentence report that noted the parties' agreement. González-Santillan entered his guilty plea on March 3, 2009 and the court scheduled a sentencing hearing. And here's where things began to go off the rails.

Prior to his sentencing, González-Santillan failed to appear for a scheduled meeting with his probation officer on June 8th. And then, the next day, he failed to appear for his sentencing hearing. In response, the court revoked the terms of González-Santillan's bail (which included electronic monitoring and home detention) and issued an arrest warrant. González-Santillan's whereabouts were unknown until thirteen years later when he was arrested on March 9, 2022 in the Dominican Republic. In due course, he was extradited to the United States and held in custody. In anticipation of González-Santillan's (at long last) sentencing, and given the time that had elapsed, the

court ordered the USPO to issue an updated presentence report (the "Amended Presentence Report"), which it did on June 17th.

In relevant part, the Amended Presentence Report mimicked the parties' original plea agreement. The government objected on the basis that the "report fail[ed] to include that by absconding the jurisdiction of the Court for thirteen years, defendant obstructed justice." Accordingly, the government sought a sentencing enhancement under U.S.S.G. § 3C1.1, which increases a defendant's adjusted offense level by two for obstructing justice (we'll explain this Guideline in more detail shortly).

The USPO adopted that recommendation and amended the report (the "Second Amended Presentence Report") to include a two-point obstruction-of-justice sentencing enhancement, placing González-Santillan at a total adjusted offense level of twenty-seven with a corresponding guideline range of seventy to eighty-seven months' imprisonment. In making that adjustment, the USPO explained that the enhancement was applicable for the reasons outlined in the government's objection. In response, González-Santillan submitted his sentencing memorandum, which opposed the USPO's findings on the bases that: (1) the parties' original plea agreement barred the government from seeking an obstruction-of-justice enhancement because "[t]he parties agree[d] that no other adjustments or departures [were] applicable in this case nor [would] be sought by the parties"; and (2) the government

had failed to prove that the enhancement was applicable because it had not presented any evidence that he willfully failed to appear at his sentencing hearing.

At González-Santillan's sentencing hearing, he argued his total offense level wasn't twenty-seven; rather, he calculated a total offense level of twenty-one in the event the court added two points for obstructing justice, and requested a sentence of thirty-seven months.[3] The government argued that González-Santillan's total offense level was indeed twenty-seven and initially sought a sentence of eighty-seven months, at the top of the guideline range, but later recanted and requested seventy months, at the lower end of González-Santillan's guideline range, in accordance with the plea agreement's original pledge that "[t]he United States [would] recommend a sentence at the lower end of the applicable guideline range."[4] González-Santillan voiced his objection to the government's recommendation for a sentence at the higher end of the applicable guideline range, explaining that its recommendation was a breach of the plea agreement. The court

_____

[3] Although González-Santillan had previously agreed to a total offense level of twenty-five, he argued at sentencing that his total offense level was then twenty-one because of the efforts he took to rehabilitate himself during the thirteen years of his abscondment.

[4] True to its word, the government dismissed the five counts of aiding and abetting money laundering against González-Santillan at sentencing.

agreed, noting that the government was bound by its pledge to seek a sentence at the lower end of the guideline range. However, with respect to the obstruction-of-justice sentencing enhancement, it explained that the government could seek the enhancement because González-Santillan had engaged in conduct, his thirteen-year disappearance, that occurred after the plea agreement had been signed by the parties and therefore the government was not in breach of the agreement in making its request.

After hearing from the parties and in accordance with the Second Amended Presentence Report, the court pegged González-Santillan's total offense level at twenty-seven with a corresponding guideline range of seventy to eighty-seven months' imprisonment. In doing so, it applied the obstruction-of-justice sentencing enhancement, explaining that "Mr. Gonzalez willfully obstructed or impeded or attempted to obstruct or impede the administration of justice with respect to his sentencing for this offense by absconding from pretrial supervision and remaining a fugitive for 13 years." The court then meted out a seventy-month term of imprisonment. Before the hearing's conclusion, González-Santillan's attorney lodged an objection to the sentence, again incorporating his objections outlined in his sentencing memorandum[5] and labeling the sentence as both procedurally

_____

[5] In relevant part, González-Santillan's arguments in his sentencing memorandum included his belief that: the government

- 7 -

unreasonable due to the absence (he says) of evidence of willfulness and substantively unreasonable as excessively long.

This timely appeal followed.

## DISCUSSION

González-Santillan takes exception to the district court's imposition of the two-level obstruction-of-justice sentencing enhancement. U.S.S.G. § 3C1.1 (the "enhancement" or "sentencing enhancement") provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

Application note 4(E) is illustrative of the statute's covered conduct, explaining that "escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding" are examples of obstructive or impeder conduct for which the enhancement applies. U.S.S.G. § 3C1.1 cmt. n.4(E) (emphases added).

improperly sought and obtained the obstruction-of-justice sentencing enhancement; the government failed to provide any evidence to support the sentencing enhancement; he was being sentenced harsher than his co-conspirators who received sentences of thirty, twenty-four, and about eleven months, respectively; he was largely rehabilitated; and a lighter sentence was warranted as a first-time offender.

Against the application of the enhancement González-Santillan launches two arguments, and we'll take each in turn.

## A.     The Court's Application of the Obstruction-of-Justice Enhancement

First up is González-Santillan's primary argument that the district court erred when it applied the sentencing enhancement because the government failed to properly establish that he "willfully" failed to appear for his sentencing hearing.  Rather than produce evidence of willfulness, González-Santillan says, the government did nothing more than summarily note that he left his electronic monitoring device at his residence when he fled the jurisdiction.  That alone is insufficient proof, he concludes, and accordingly the enhancement should not have applied as a matter of law.

Unsurprisingly, the government disagrees.[6]  It argues that U.S.S.G. § 3C1.1 is applicable here because

---

[6] The government first maintains that González-Santillan has waived his challenge to the court's application of the sentencing enhancement because "he asked for [it] when recommending his desired sentence" and never argued against its application.  We disagree.  The sentencing hearing transcript (and his sentencing memorandum) indicates that initially, González-Santillan requested a sentence akin to that of his co-defendant.  However, alternatively he stated that "[i]f the Court understands that an additional punishment should be imposed by his failure to appear, disrespect to the courts, leaving the jurisdiction, I understand that.  But that shouldn't double that 30-month sentence [the sentence he sought] to 60 and even less to 70 -- or more than 70 months."  The "if" conditional language indicates to us that

González-Santillan's abscondment is clearly covered conduct. Furthermore, the government notes, the Second Amended Presentence Report succinctly and pellucidly spelled out the factual findings of González-Santillan's flight to the Dominican Republic for thirteen years, and he did not object to those findings below. Continuing, the government emphasizes that three things -- the record, § 3C1.1.'s application notes, and the case law -- all make clear that González-Santillan's abscondment was willful and therefore the government met its burden of proving by a preponderance of the evidence that González-Santillan willfully failed to appear for his sentencing hearing.

We review preserved claims of procedural sentencing errors for abuse of discretion. See United States v. Coplin-Benjamin, 79 F.4th 36, 42 (1st Cir. 2023). "Within this framework, we review a district court's factual findings for clear error, and its interpretation and application of the Guidelines de novo." United States v. Velez-Soto, 804 F.3d 75, 77 (1st Cir. 2015); see also United States v. Nygren, 933 F.3d 76, 82 (1st Cir. 2019). When a defendant challenges the factual basis for the district court's application of a sentencing enhancement, as González-Santillan does here, "we ask only whether the court

González-Santillan simply argued an alternative basis to his original plea to be sentenced as his co-defendant who the record reflects was not given the two-point obstruction-of-justice sentencing enhancement.

clearly erred in finding that the government proved the disputed fact by a preponderance of the evidence." United States v. Luciano, 414 F.3d 174, 180 (1st Cir. 2005) (citation omitted). In our review of the evidence we've noted that "[e]ither direct or circumstantial evidence will do, with the sentencing court free to draw commonsense inferences from the evidence." United States v. Matthews, 749 F.3d 99, 105 (1st Cir. 2014).

Turning now to consider González-Santillan's specific contentions on this issue, § 3C1.1 application note 4(E), as we previously noted, explains that "escaping or attempting to escape from custody before trial or sentencing[,] or willfully failing to appear, as ordered, for a judicial proceeding" is the type of conduct to which the sentencing enhancement applies. United States v. Rivera-Nazario, 68 F.4th 653 (1st Cir. 2023), is instructive as we consider González-Santillan's contentions. There, we confronted an appellant's analogous claim that the government had failed to show that he had acted "willfully" in failing to appear. Id. at 661. Upon review, we held that everything about the appellant's conduct -- namely his violation of "dozens of release conditions"; "fail[ure] to appear at his sentencing hearing"; departure from "his third-party custodian's home without the permission of pretrial services"; and outstanding fugitive status "for over ten months" -- suggested willfulness. Id. We concluded that "[a] criminal defendant who evades authorities and fails to

appear for a sentencing hearing has obstructed justice; and '[t]o hold otherwise would condone direct disobedience of a court's conditional release order.'" Id. (second alteration in original) (quoting Fuller v. United States, 398 F.3d 644, 652 (7th Cir. 2005)).

As with Rivera-Nazario, we similarly conclude that the circumstances of González-Santillan's abscondment suggest willfulness. As a reminder, the record evinces González-Santillan's: failure to attend his scheduled appointment with his probation officer; failure to appear at his sentencing hearing; abscondment for thirteen years to a different country; and of particular import, his acknowledgment of his abscondment at his sentencing hearing.[7] And to reiterate, "[a] criminal defendant who evades authorities and fails to appear for a sentencing hearing has obstructed justice." Id. Moreover, despite González-Santillan's insistence that "no factual conclusion or finding was included" in the Second Amended Presentence Report, in its Addendum to the Report the USPO explained that the enhancement was appropriate because (and to repeat) he "absconded from his pretrial release just prior to his Sentence Hearing" and "was a fugitive from justice for 13 years."

---

[7] Before the court announced its sentence, González-Santillan remarked to the court that: "I'd like to apologize to you for my mistake . . . . I know that I made a mistake by not having appeared in court on that date. . . . I went to the Dominican Republic."

Plucking another arrow from his quiver, González-Santillan argues that our decision in United States v. Marshall, 753 F.3d 341 (1st Cir. 2014), "requires the government to prove that [he] acted with knowledge that his conduct would certainly obstruct the proceedings." However, in Rivera-Nazario, we declined an appellant's invitation to address a similar question: "whether district courts must make a particularized finding that a defendant had a specific intent to obstruct justice to impose a § 3C1.1 enhancement." 68 F.4th at 661–62. We declined to do so because, as the record elucidated, the appellant's conduct indisputably supported the enhancement. See id.; see also United States v. Hall, 434 F.3d 42, 61 (1st Cir. 2006) (declining to address whether particularized findings of specific intent to obstruct justice are required under § 3C1.1 where "evidence clearly supports the district court's ultimate" obstruction-of-justice finding). And while González-Santillan is correct that the government bears the burden of proving sentencing enhancements, see Matthews, 749 F.3d at 105, and by a preponderance of the evidence, see, e.g., United States v. Paneto, 661 F.3d 709, 715 (1st Cir. 2011); United States v. Cannon, 589 F.3d 514, 517 (1st Cir. 2009), here, as in Rivera-Nazario, we conclude that the government has easily met its burden because the facts of this case -- as adequately set forth in the Second Amended Presentence Report and by González-Santillan's own in-court admission --

clearly support the conclusion that he willfully failed to appear for his sentencing hearing.  Accordingly, we espy no error from the district court's application of the sentencing enhancement.[8]

---

[8] Before turning the page on González-Santillan's primary argument, we quickly dispatch a secondary aspect of that claim. In his brief, González-Santillan summarily states that he "was not 'under custody' at any time prior to him absconding nor he 'escaped' [sic] from any prison."  This is important, González-Santillan explains, because U.S.S.G. § 3C1.1's application notes distinguish between "escaping or attempting to escape from custody before trial or sentencing" from failure to appear for a judicial proceeding.  And for the latter, unlike the former, a showing of willfulness is required, which the government failed to produce.  However, a thorough review of the record reveals that González-Santillan did not make this argument below in either his sentencing memoranda or at his sentencing hearing. Accordingly, "[t]here is a procedural obstacle to this claim of error:  it is raised for the first time in this court." United States v. Mercado, 777 F.3d 532, 536 (1st Cir. 2015).  And therefore, we review, at best, for plain error.  See id.; see also United States v. Padilla, 415 F.3d 211, 218, 220 (1st Cir. 2005) (en banc); United States v. Bey, 188 F.3d 1, 10 (1st Cir. 1999) (applying plain error review when a defendant's objections were raised for the first time on appeal).  Yet, González-Santillan has not even attempted to address the applicable standard of review, and therefore we deem his claim waived.  See United States v. Vázquez-Rosario, 45 F.4th 565, 571 (1st Cir. 2022) (deeming an appellant's claim waived when he did not address the applicable standard of review); see also United States v. Bulger, 816 F.3d 137, 157 (1st Cir. 2016) ("Whether you characterize Bulger's Brady claim as unpreserved because he did not seek a ruling below, or waived for failure to adequately develop it on appeal, his claim fails.").  Separately, we deem González-Santillan's "under custody" argument waived for lack of developed argumentation.  His barebones assertion that he was not "under custody" without any further explanation for why he believes that to be so simply won't cut it.  As we explained many times, "we see no reason to abandon the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); see, e.g., Brown v. Trs. of Bos. Univ., 891 F.2d 337, 352 (1st Cir. 1989).

## B.    Breach of the Parties' Plea Agreement

Alternatively, González-Santillan argues that the clear terms of the plea agreement barred the government from seeking the sentencing enhancement because they specified that "no other adjustment or departures [were] applicable in this case nor shall be sought by the parties," and therefore the government breached the plea agreement by doing so.  Furthermore, González-Santillan claims that because the plea agreement did not contain a breach clause,[9] the government "had no power to withdraw from its obligations [under] the plea agreement," including its vow not to seek any upward adjustment or enhancement.  Continuing on, González-Santillan explains that this was not a situation where the government was under an "unflagging duty" to provide accurate information to the court, but instead was a situation where the government, without any prompting from the court, sought a clearly

_____

[9] Simply put, a breach clause, or breach provision as it is sometimes referred to, is a clause sometimes found in a defendant's plea agreement that allows the government to withdraw from the plea agreement if the defendant violates a term or condition of the agreement.  For example, in United States v. Gardner, 5 F.4th 110, 113 (1st Cir. 2021), a case that both parties here cite to, we considered Gardner's claim that he was not bound by his guilty plea under the plea agreement after he breached the agreement and the government withdrew from it.  In relevant part, Gardner's breach clause stated that if "before sentencing," he "violat[ed] any term or condition of [his] Plea Agreement, engage[ed] in any criminal activity, or fail[ed] to appear for sentencing," the government "may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom."

barred sentencing enhancement. (Quoting United States v. Almonte-Nuñez, 771 F.3d 84, 89 (1st Cir. 2014)).

The government argues that it did not breach the plea agreement because the agreement only barred it from seeking additional adjustments based on conduct that took place before the parties signed it, not conduct that occurred after its execution.[10] And utilizing "traditional principles of contract law," it launches an interpretive argument based on the clause's temporal language to establish that the "are applicable" language of the plea agreement could only include those adjustments and departures that were then available at the time the agreement was signed. Moving along, the government contends that González-Santillan himself breached the plea agreement by absconding because "[a]n implied but obvious term of any plea agreement is that the defendant show up for sentencing and not flee the jurisdiction."

---

[10] The government insists that González-Santillan has waived his breach argument because he requested the sentencing enhancement at his sentencing hearing and he has failed in his opening brief to challenge the district court's rationale for finding that no breach of the plea agreement had occurred. Upon review, we are not persuaded for two reasons. First, as explained above, González-Santillan initially objected to a sentencing enhancement. And second, our review of his brief reveals that González-Santillan does indeed attack the district court's rationale for finding that no breach of the plea agreement occurred. For example, González-Santillan argues that the district court incorrectly assumed that his failure to appear for his sentencing hearing constituted breach, cites to our decision in Gardner, 5 F.4th at 110, for the proposition that the absence of a breach clause supports his position, and launches additional arguments against the district court's reasoning.

- 16 -

United States v. Hallahan, 756 F.3d 962, 972 (7th Cir. 2014). Therefore, the government continues, González-Santillan materially breached the plea agreement when he fled the jurisdiction and that abscondment subsequently released it from the specific performance of its remaining obligations under the agreement. And, seeking to highlight González-Santillan's apparent hypocrisy, the government points out that González-Santillan, himself, disregarded the agreement at sentencing when he advocated for a sentence at the lower end of his requested offense level of twenty-one, which is not the twenty-five offense level the plea agreement had originally contemplated.

At his sentencing hearing, González-Santillan objected on the basis that the government violated the plea agreement, so we review his claim de novo. See United States v. Brown, 31 F.4th 39, 50 (1st Cir. 2022). We've held that traditional principles of contract law guide our interpretation of and performance of a plea agreement. See United States v. Clark, 55 F.3d 9, 12 (1st Cir. 1995). And because a defendant who enters into a plea agreement waives his fundamental constitutional rights, "we hold prosecutors to 'the most meticulous standards of both promise and performance.'" United States v. Marín-Echeverri, 846 F.3d 473, 478 (1st Cir. 2017) (quoting Almonte-Nuñez, 771 F.3d at 89). Accordingly, the government's burden is not satisfied by mere "lip service." See id. (citation omitted). And "[i]n addition to

- 17 -

entitlement to the government's technical compliance with the agreement, appellant is entitled to the 'benefit of the bargain' and the 'good faith' of the prosecutor." Brown, 31 F.4th at 50 (quoting Ubiles-Rosario, 867 F.3d at 283). Therefore, we consider "the totality of the circumstances" in considering whether the government failed to uphold its end of the bargain. Id.

In support of its argument that González-Santillan breached the plea agreement when he fled the jurisdiction, thereby relieving the government of any further obligations thereunder, the government points to our sister circuit's opinion in Hallahan, which considered a similar assertion.

In that case, the defendants entered into plea agreements in exchange for the government's promise, amongst others, to recommend sentences at the low end of the applicable guideline ranges. Hallahan, 756 F.3d at 967. However, before their sentencing hearings got underway, defendants fled the jurisdiction for twelve years. See id. After their capture and return, their sentencing hearings eventually commenced and the government sought not the low-end sentences originally bargained for, but rather the "longest of sentences" at the highest end of the applicable guideline advisory ranges, arguing that it was relieved of its original obligation to seek sentences at the low end of the guideline ranges because the defendants had breached the plea agreement by absconding. See id. at 967-68, 972. The

- 18 -

district court agreed and imposed the government's requested sentences at the higher end of the guideline ranges. See id. at 967-68.

Upon review and as relevant here, the Seventh Circuit sided with the government, finding that the government's pledge "was excused by the defendants' breach of their obligation to show up for sentencing and not flee the jurisdiction." Id. at 972. More specifically, the court explained that:

> An implied but obvious term of any plea agreement is that the defendant show up for sentencing and not flee the jurisdiction. The defendants breached this obligation when they fled the district and avoided the punishment for their crimes for twelve years. The defendants' flight constituted a material breach, depriving them of the ability to hold the government to its promise to recommend the low end of the applicable guideline range.

Id. (citation omitted).[11]

We find Hallahan persuasive and in full accord with our circuit's plea-bargaining jurisprudence. See United States v.

---

[11] See also United States v. Munoz, 718 F.3d 726, 729-30 (7th Cir. 2013) (explaining that "[n]o defendant could reasonably expect that he could abscond for five years and still hold the government to its promises under the plea agreement" and that "[w]hen [defendant] fled the country and spent nearly five years as a fugitive in Mexico, he breached what we believe was an implied but obvious term of the plea agreement that he remain in the country and show up for sentencing"); United States v. Delacruz, 144 F.3d 492, 495 (7th Cir. 1998) ("Since defendant failed to appear for sentencing and continued his criminal conduct, the government was no longer obligated to recommend a sentence of 24 months at his sentencing hearing.").

- 19 -

Bermudez, 407 F.3d 536, 540 (1st Cir. 2005) ("[I]f [a] defendant fails to fulfill his promises, the government is released from the agreement." (quoting United States v. Gonzalez-Sanchez, 825 F.2d 572, 578 (1st Cir. 1987))). Like the Hallahan court we conclude that "[a]n implied but obvious term of any plea agreement is that the defendant show up for sentencing and not flee the jurisdiction." 756 F.3d at 972. Accordingly, we conclude that González-Santillan materially breached the plea agreement when he hightailed it out of the jurisdiction for thirteen years to avoid punishment. See id. And therefore, it follows that González-Santillan is now deprived of the opportunity to hold the government to its original pledge "that no other adjustments or departures [were] applicable in this case nor [would] be sought by the parties." That is so because we have held that "if the defendant fails to fulfill his promises, the government is released from its agreement." Bermudez, 407 F.3d at 540 (quoting Gonzalez-Sanchez, 825 F.2d at 578). Accordingly, we detect no breach of the parties' plea agreement stemming from the government's request for the obstruction-of-justice sentencing enhancement. Nor do we find error in the district court's application of it.

## FINAL WORDS

In sum, González-Santillan's sentence is **affirmed**.